# THE WEBER WAGON COMPANY

*v.*

## PETER KEHL.

*Filed at Ottawa January 18, 1892.*

1. NEGLIGENCE—MASTER AND SERVANT—*unsafe appliances.* Where a workman in a shop is injured while at service, in consequence of the smooth and slippery condition of the floor, which was of hard wood, the fact that the superintendent of the works, or any one else in charge thereof, directed a carpenter to put down a soft wood floor, is a circumstance to be considered by the jury, in connection with other evidence, whether the floor as laid and used was safe or not. Evidence that the floor was changed after the accident is not strictly proper. But when the evidence in chief of such fact is stricken out, leaving the cross-examination, the error is too slight to require a reversal.

2. SAME—*promise of employer to remove the danger—due care, etc.—questions of fact for the jury.* Whether the floor that the master has provided for the servant to stand on in front of a machine was in an unsafe and dangerous condition, whether the servant exercised due care, and whether he notified the master's foreman of the condition of the floor, and was promised by those who had authority to remedy the difficulty that the floor would be made safe, and relying upon such promises he was induced to remain in the master's employment until he was injured, are all questions of fact for the jury.

3. SAME—*right of servant to rely on promise of employer to remove danger.* If a servant is assured, from time to time, that an unsafe floor will be supplied with a better one, he will have the right to rely on such assurance, and such reliance can not be overcome by a fact or facts which may create a bare suspicion that the change will not be made.

4. SAME—*promise to repair—suspicion the promise will not be kept—instruction thereon.* In a suit by a servant against his master to recover for a personal injury from negligence in fixing a floor in a proper manner for safety, the proof showed the making of three promises to him to change the floor, which tended to prove that plaintiff was induced to remain in the service by such promises. Defendant asked an instruction, in substance, that if, between the promise made to plaintiff and the time of the injury, sufficient time had intervened within which to change the floor, and such time had elapsed attended with any circumstances that were calculated to raise in the mind of a prudent person, situated as the plaintiff was, a suspicion that the floor was not going to be fixed, then it was plaintiff's duty to quit, etc.: *Held,* properly refused, as entirely ignoring the several promises, and allowing the jury

to act on the first promise alone, and as requiring plaintiff to act on mere suspicion.

5. SAME—*promise to repair floor—authority of foreman.* Where it is the duty of a foreman in a wagon factory to see that the material for all the wagons goes into the factory, and goes out in proper shape made into wagons, it can not be said that he has no control of the floors in the shops. Having control of the material used, and of the shop floors, and of the men engaged in work, if the shops or machinery should get out of repair or be unsafe, so that the material could not be safely manufactured, he will have power to bind his employer by promising to have a dangerous floor replaced with a safe and proper one, and a servant to whom made may rightfully rely on such promise of the foreman.

6. SAME—*two or more acts alleged—but one need be proven.* Where the plaintiff in an action to recover damages for a personal injury, alleges two or more acts of negligence producing the one injury complained of, he is not bound to prove the several acts alleged, but he may recover on proof of any one of the grounds of action which is sufficient.

7. So where a servant sued his master for a personal injury while engaged in service, and alleged two grounds of actionable negligence, viz., negligence in failing to remedy a defect in the floor of the shop where the plaintiff was employed, and also secured a promise of the defendant to place guards over certain knives used in the shaping of materials and a failure to do so, it was *held,* that the plaintiff might recover without any proof of the promise to place guards over the knives.

8. SAME—*proof of dangerous condition of floor.* In an action by a servant against the master to recover for a personal injury caused by the unsafe condition of the floor used by the plaintiff while performing service, it is proper to show that the floor as constructed was unsafe, and a witness having the proper skill may testify what would or would not remedy the difficulty or lessen the danger in its use.

9. Witnesses who have experience in the use of a machine called a "shaper," and who are thereby possessed of a peculiar skill, may be allowed to give their opinions whether a hard wood floor, when laid in front of a shaper, becomes slippery by use, and whether a soft wood floor does not.

10. SAME—*instruction as to comparative negligence.* On the trial of an action by a servant against his employer for an injury, based on the defendant's negligence, the defendant asked an instruction to the effect that the plaintiff could not recover unless certain propositions of fact, including the negligent acts charged and the freedom of negligence of the plaintiff, were proved by a preponderance of the evidence, which the court modified by adding the words, "unless you shall find that the negligence of the plaintiff was slight and the negligence of

the defendant was gross when compared with each other, as more particularly in the second instruction read to you," and gave the same so modified : *Held*, that while it might have been better practice if the law on the subject of comparative negligence had been left to rest on the plaintiff's second instruction, yet as the modification merely called attention to the other instruction, and reiterated the doctrine stated therein, the modification was not error.

11. Personal injury—*elements of damage*. In an action to recover damages for the loss of a hand through negligence, the fact, of itself, that the plaintiff has not been able to get work is not an element of damage ; but if he is incapacitated for labor on account of the injury, that is a proper element of damage for the consideration of the jury.

12. Employer—*duty in furnishing machinery*. The law imposes on the employer only the obligation to use reasonable and ordinary care and diligence in providing suitable and safe machinery. The machinery is not required to be the best or most improved kind, or to be absolutely safe. It is sufficient if it be reasonably safe.

13. Practice—*refusal to strike out the answer of a witness—motion afterwards allowed.* Where the court refused to strike out the answer of a witness because no objection was made to the question, but the answer was afterward stricken out by consent of counsel conducting the examination, it was *held*, the party moving to strike out the answer had no legal ground of complaint.

14. Same—*leading questions*. Leading questions in the examination of witnesses, as a general rule, are so much within the discretion of the court as that the allowance of such a question alone will not ordinarily be a sufficient ground for the reversal of a proper judgment.

15. Same—*directing what the verdict shall be*. Where there is no evidence tending to show a right of the plaintiff to a judgment, or when the evidence if so insufficient that the trial court would be required to set the verdict aside if for the plaintiff, the court may properly instruct the jury to find for the defendant, but not if there is evidence tending to support the allegations of the declaration.

16. Instructions—*need not be repeated*. There is no error in refusing an instruction when another one given contains its substance, or at least all that is essential in the one refused.

17. There will be no error in refusing instructions asked, when the jury are fully instructed upon each and every question involved in the case, in others which are given.

Appeal from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county; the Hon. Frank Baker, Judge, presiding.

Messrs. WING, STOUGH, CARTER & QUALEY, and Mr. S. S. PAGE, for the appellant.

Messrs. ELA & GROVER, for the appellee.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was an action brought by Peter Kehl, against the Weber Wagon Company, to recover for the loss of a hand cut off by the machinery of the defendant while he was in the service of the company as a day laborer.

It appears from the evidence that plaintiff, in the month of February, 1887, entered the employ of defendant company, which owned and operated a wagon factory at Auburn Park, in the city of Chicago. His duty in his employment, until August, 1887, was the operation of a wood-working machine called a "matcher." In August the factory was destroyed by fire, and was rebuilt and ready for operation about December 1, 1887. During December appellee operated a "shaper" on the first floor of the factory, and when the shaper upon the second floor (where the injury occurred) was ready for use, appellee was employed to run it. In rebuilding the factory the second floor was constructed of hard maple flooring, planed smooth. It also appears that the floor in front of the shaper, by constant use, became more smooth and slippery. In view of the condition of the floor, about the last part of February, 1888, as the evidence tends to show, Kehl complained of it to Jeffery, defendant's foreman, who promised "to fix it." Two weeks later, Jeffery's promise not having been complied with, Kehl again complained to Weber, appellee's superintendent, who said he would see to it. Again, some two weeks before the injury, Kehl complained to the foreman, Jeffery, who again promised to remedy the defect. Nothing was, however, done to the floor to remedy the difficulty, and on the 12th day of April, 1888, while plaintiff was operating the machine in

shaping a wagon hound, he slipped on the slippery floor, and his left hand was caught in the knives of the shaper and cut off.

It is apparent from the evidence that while the shaper is an old and a valuable machine,—as much so, perhaps, as any wood-working machine in use,—still it is regarded as a dangerous machine. It is thus described: It has an iron top or table of the dimensions of about five feet by four, which top or table is supported by an iron column or leg. This table stands about thirty-two inches in hight from the floor. There are two openings or holes in the table, some twenty-eight inches apart, and up through these holes project spindles, which have their attachments or bearings on the sides of the iron column or leg of the machine. At the lower end of the spindles are pulleys, about which the bands go which turn the spindles. To the ends of the spindles that project above the level iron table the knives are fastened. The parts of the spindles which project above the table and to which the knives are fastened are called "heads." The length of the spindles, which stand perpendicularly alongside the column or leg of the machine, is about twenty-four or twenty-six inches. The pulleys which the belts go around are about twelve or fourteen inches below the table. A great variety of knives are used. They consist of a flat piece of steel, say from a quarter to five-eighths of an inch in thickness, and are held by two collars. The collars are provided with grooves, which are called V grooves, on account of their shape. When the knives are set in the grooves and the spindles whirl, the knives rotate, with the bevel of the knives out. The wood is shaped, cut or planed by being held against these whirling knives, which turn with the speed of 4000 or 5000 revolutions per minute. The wood is laid by the operator upon the table, and moved forward or pulled backward against the revolving knives by him. The spindles are a little closer to one edge of the table, which is called the front of the shaper, and by the front the operator commonly stands.

As to the fact that plaintiff received the injury there is no dispute, but as to the manner in which the injury occurred there is a conflict in the evidence. The plaintiff charged in his declaration that the floor in front of the shaper was hard maple; that he called the attention of appellant's foreman and superintendent to said floor, and that they promised to put down a pine floor in its place, and that he, by reason of such promise, continued to operate the shaper, and that while operating said shaper with due care, he slipped upon said hard maple floor and fell into the knives and lost his hand.

In the circuit court plaintiff recovered a verdict and judgment for $2500, which was affirmed in the Appellate Court, and the defendant, for the purpose of reversing the latter judgment, has prosecuted this appeal.

Numerous questions have been raised and discussed in the argument, and while it would not be possible to consider at any length all the questions which have been argued, without extending this opinion to an unusual length, we will endeavor to consider those questions deemed most important.

The witness Jeffery testified that his duties, while employed in the shops of defendant, were, "to see that the stuff came in for the wagons, and came out in proper shape." Then counsel for plaintiff asked this question: "You had general superintendency, as I understand you, of the wood-working department?" This was objected to and overruled, and the decision is relied upon as error. If it was the duty of the witness, as he had already testified, to see that the proper material was furnished to the shop for the wagons, and to see that the material came out in good wagons, it must be apparent that he exercised the powers of a general superintendent. But whether he did or not, the only objection to the question is that it was leading, and such questions, as a general rule, are so much within the discretion of the court that we would not feel inclined to hold that the allowance of a leading question, alone, should reverse a judgment.

It is next claimed that the court erred in allowing plaintiff to testify that he was not careless at the time he received the injury. No objection was interposed to the question when it was asked, and on this ground the court denied a motion to strike out the answer to the question. But conceding that the court erred in this regard, plaintiff's counsel allowed the answer to be stricken out, and as counsel obtained, by consent, all that they asked of the court by the motion, we do not see that they have any ground for complaint.

It is also claimed that it was error to allow the plaintiff to testify that he had not been able to find work since his injury. The fact, of itself, that plaintiff was not able to find work, could not be regarded as an element of damages in a case of this character. But upon looking into the record it will be found that the reason plaintiff could not find work was on account of his limited capacity to perform labor, on account of his injury. If plaintiff was incapacitated for labor on account of the injury, that was an element of damage proper for the consideration of the jury.

Complaint is also made that plaintiff was allowed to testify that the nailing of strips on the floor in front of the shaper was impracticable. It was proper to show that the floor as constructed was unsafe, and we perceive no reason why a witness who had the proper experience might not testify what would or would not remedy the difficulty.

It is also claimed that the court erred in allowing the witness Webster Sheers to testify that Jeffery directed him to put down a soft floor. The witness was a carpenter in the employ of the company, and if he was directed by Jeffery, or any other person in charge of the works, to change the floor, that was a circumstance to be considered, in connection with the other evidence, whether the floor as laid and used was safe.

It is also insisted that the court erred in permitting evidence that the floor was changed after the accident. As we understand the record, the evidence introduced on this point

was stricken out or withdrawn, except the cross-examination of the witness Swigert, who said : "Yes, sir, there was a soft wood floor put down by Mr. Sunday, under his own direction. He proposed it, and asked Mr. Weber about it. I believe he gave permission to put it down. Mr. Sunday was running a shaper at that time." The Appellate Court, in considering this evidence, said : "Evidence that the floor was changed after the accident ought not to have been admitted, (*Hodges* v. *Percival,* 132 Ill. 53,) but the evidence as to this was of such a character that it was harmless, being, not that the defendant changed the floor, but that the new employe, Mr. Sunday, had fixed it to suit himself, as is customary with shapers, some liking one thing and some another." We think this question was properly disposed of by the Appellate Court. While the evidence was not strictly admissible, it was of such a character that it could not injure the defendant.

Objection is made to the opinions of witnesses to the effect that a hard wood floor became slippery by use and that a soft wood floor did not. The witnesses who were allowed to give their opinions were those who had experience in the use of a shaper, and who had acquired peculiar skill in that direction, and we perceive no objection to their evidence.

The pattern used by the plaintiff at the time of the accident was preserved and offered in evidence, with the notch or cut in it that was made at the time, and it is contended that the court erred in excluding evidence offered by defendant, of experienced shaper hands, that the cut in the pattern was made by the right cutter head. Upon examination of the record it will be found that the court admitted the offered evidence of all the witnesses except one, who had no skill or experience on the subject. There is therefore no foundation for the objection.

It is also claimed that the court erred in sustaining an objection to the following question, asked the witness Fletcher : "State to the jury whether or not it would be a careful, prudent and safe operation to hold a wagon hound that he was

shaping, between two knives while he was shaping it?" The abstract shows that the question was answered as follows: "The operator should hold a wagon hound, in shaping it, on the outside of the heads, and not between them, because the stuff might be thrown against one head when it is started to be operated on, and it might recoil and so thrown against the other head."

Complaint is also made that the court excluded certain questions of the defendant on the subject of guards over the shaper knives. It is true that a few questions propounded to witnesses, relating to this subject, were held to be improper; but upon examination of the record it will be found that appellant's witnesses testified fully upon this question, and the ruling on the questions excluded had no bearing on the real merits of the controversy.

Much complaint is made in the argument in regard to the decision of the court on the instructions. Only three instructions were asked and given on behalf of the plaintiff. Quite a number of objections are urged by counsel for appellant against each of the three instructions, but it will serve no useful purpose to consider these objections in detail. Instructions 1 and 3 are based upon and fully sustained by the decision of this court in *Missouri Furnace Co.* v. *Abend,* 107 Ill. 44, where a similar question was involved, and, notwithstanding the able argument of counsel, we see no reason for departing from the doctrine established in the case cited. The other instruction merely lays down the rule of comparative negligence as it has been approved by this court in numerous cases. So far, therefore, as the instructions given on behalf of plaintiff are concerned, they are free from error.

The defendant requested the court to give the following instruction:

"2. You are instructed by the court that the plaintiff is not entitled to recover in this suit unless you find that each and all of the following five propositions of fact are established by

a preponderance of the evidence: First, that the plaintiff, while shaping a wagon hound, received his injury by reason of slipping on the floor; second, that the floor upon which he slipped was an unsuitable and dangerous floor for the operation of a shaper; third, that he was about to quit his employment, and that the defendant, or some one authorized by the defendant to act for him in that matter, promised the plaintiff to remedy and fix the floor; fourth, that the plaintiff, by said promise, was induced and persuaded to continue his work on the machine until the time of his injury; and fifth, that the plaintiff, at the time of receiving the injury, was engaged in no negligent and improper operation of the shaper that materially contributed to his injury."

The court refused to give the instruction as asked, but modified it by adding the following, and then gave it to the jury: "Unless you shall find that the negligence of plaintiff was slight, and the negligence of defendant was gross, when compared with each other, as more particularly explained in the second instruction read to you."

It will be observed that the court had given an instruction to the jury on behalf of the plaintiff on the question of comparative negligence, and perhaps it might have been a better practice if the law on that subject had been left to rest upon that instruction; but as the modification merely called attention to the other instruction, and reiterated the doctrine announced therein, it could not prejudice the rights of the defendant with the jury, and hence the modification was not erroneous.

It is also claimed that the court erred in refusing its instruction No. 16. The court gave for the defendant its instruction No. 15, which will be found to contain the substance of No. 16, or at least all that was embraced in that instruction which was proper for the jury.

We do not think the court erred in refusing defendant's fourteenth instruction. The instruction stated, in substance,

that if, between the promise made to plaintiff and the time of the injury, sufficient time had intervened within which to change the floor, and such time had elapsed attended with any circumstances that were calculated to raise in the mind of a prudent person, situated as the plaintiff was, a suspicion that the floor was not going to be fixed, then it was plaintiff's duty to quit, etc. The testimony showed that there were three promises made plaintiff, which tended to prove that he was induced to remain in the service of the defendant from time to time. This instruction entirely ignored these several promises, and under it the jury might disregard the second and third promise. Moreover, the instruction declares, if the circumstances were sufficient to raise a bare suspicion that the floor would not be fixed, it was the duty of plaintiff to quit work. If the plaintiff had been assured from time to time that the floor would be fixed, he had the right to rely upon such assurance, and such reliance could not be overcome by a fact or facts which might create a bare suspicion.

Instruction No. 18 was also properly refused. If Jeffery's duty was to see that the material for all the wagons went into the factory, and went out in proper shape made into wagons, it would be placing too narrow a construction on his authority to hold, as declared by the instruction, that he had no control over the floor in the shops. He had control of the material used in the shops, control of the men and control of the shops. Possessing these powers, if the machinery in use was not the proper kind to be used, or if the shops should get out of repair so that the material he furnished could not be properly or safely manufactured, it would seem that he had the right to control such matters.

No. 19 of defendant's instructions was erroneous, and hence properly refused. Under this instruction the jury were told, in substance, that all the complaints made to Jeffery were nugatory, and the plaintiff had no right to rely upon any promise he might make to repair the floor. Jeffery was the

foreman of the shops. He seemed to have complete control, and unless the plaintiff had been notified to make no complaint to him, he had, as we understand the situation of the parties, the right, if the floor was defective, to call upon him to make it safe and secure.

But independent of the instructions which were refused, it is apparent that the jury was fully instructed, on behalf of the defendant, upon each and every question involved in the record. The court gave for the defendant fourteen instructions,—eight as asked and six with slight modifications. If, therefore, it was true that the defendant's refused instructions contained correct propositions of law, the jury were so fully instructed, on behalf of the defendant, by the instructions which were given, it is apparent that no injury resulted from the decision of the court in refusing those which were refused.

The declaration in this case contained two counts. In the first it was averred that it was the duty of defendant to keep a soft wood floor in front of the shaper, for plaintiff to stand upon without slipping, and that it was also defendant's duty to place guards over the knives of said machine, so that if plaintiff should slip or fall against said machine he would be prevented from being cut by said knives, yet defendant negligently placed a hard wood floor in front of said shaper, which became slippery and unsafe, and defendant 'in no way protected said knives, but negligently permitted the same to be without guards, and the plaintiff, by reason of the slippery floor, slipped and fell against said machine, and by reason of the negligence of defendant in not guarding said knives, plaintiff's hand came in contact with said knives, and he was injured. The second count is substantially like the first, with the additional allegations that a short time before the injury plaintiff notified appellant "of the said dangerous condition of said floor and machine, and   *   *   *   the defendant thereupon promised the plaintiff, and agreed, to remedy said defects,   *   *   *   and plaintiff was induced by the defendant to believe

that there would be a change in said condition of said floor and said machine, and that said machine would be speedily put in a proper and safe condition," and defendant was induced to go on working with the expectation "that said floor and machine would be right away put in proper and safe condition;" that said floor and machine were not placed in safe condition, and plaintiff was injured by reason of defendant allowing the floor to become slippery, without "protecting the same, as is usual and necessary in such cases, * * * and by reason of the negligence of said defendant in not placing proper guards and protections over said knife or knives, as aforesaid."

On the trial, plaintiff introduced evidence tending to prove the allegations of the declaration, except the averment that the defendant promised or agreed to place guards over the knives of the shaper. As to this averment no proof whatever was introduced, and on account of a failure to introduce any proof upon this question the defendant claims no recovery can be had, and the court erred in refusing its first instruction, as follows: "The court instructs the jury, that under the pleadings and proofs in this case the plaintiff is not entitled to recover, and you should find for the defendant." The plaintiff had the right to aver in his declaration as many grounds of recovery as he saw proper, but it was not necessary to prove all that was alleged. It was sufficient to prove enough of the negligence charged to make out a case. There was evidence in support of the dangerous and slippery condition of the floor where the plaintiff was required to work; that plaintiff made complaint in regard to its dangerous condition; that defendant promised to remedy the defect, and that the injury occurred in consequence of defendant slipping on the floor while in discharge of his duty,—and that was all that could be required. The fact, therefore, that plaintiff failed to prove that defendant promised or agreed to remedy the defect of the machine in regard to guards over the knives did not preclude a

recovery, on the ground of other negligence relied upon and sustained by the evidence. Had the two grounds of negligence been so connected that the injury would not have happened in the absence of the two causes conjoined, a different question might arise. But such was not the case.

The last point relied upon in the argument of appellant is, that the evidence in behalf of the appellee did not make out a case, and the circuit court erred in overruling appellant's motion to instruct the jury to find a verdict for appellant. Under this head, the sufficiency of the evidence to sustain the judgment is fully discussed; but as this court does not pass upon controverted questions of fact, it will serve no useful purpose for us to enter upon a discussion of the evidence. In cases where there is no evidence tending to support the judgment, or where the evidence is so insufficient that the trial court would be required to set the verdict aside on the ground there was no evidence to sustain it, in case a verdict should be rendered for the plaintiff, the court might properly instruct the jury to find for the defendant. Such, however, is not this case. There was evidence tending to support the allegations of plaintiff's declaration. Its sufficiency was a question for the jury, and also a proper question for the Appellate Court, but it is not a question for consideration here. As respects the duty of the employer to the employe, the former is not required to provide absolutely safe machinery. The law imposes upon the employer only the obligation to use reasonable and ordinary care and diligence in providing suitable and safe machinery. (Shearman & Redfield on Negligence, secs. 87-92.) The machinery is not required to be the best or most improved kind, or to be absolutely safe. It is sufficient if it was reasonably safe. (*Camp Point Manf. Co.* v. *Ballou,* 71 Ill. 421.) Whether the floor that the defendant provided for the plaintiff to stand upon in front of the shaper was reasonably safe, or whether it was in an unsafe and dangerous condition; whether plaintiff exercised due care, and whether he notified the fore-

42—139 ILL.

man of the defendant company of the dangerous condition of the floor, and was promised by those who had authority to remedy the difficulty that the floor would be made safe, and relying upon such promise he was induced to remain in the employ of defendant until he was injured, were all questions of fact, which the evidence tended to establish in the plaintiff's favor. Under such circumstances the court properly refused to instruct the jury to find for the defendant.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*