## Illinois Central Railroad Company v. Martin Creighton.

1. ORDINARY CARE—*Question as to the Exercise of—Verdict—When Conclusive.*—Where there is a conflict of evidence upon the question as to whether the plaintiff, at the time of the injury, was in the exercise of ordinary care, the verdict of the jury is conclusive, no error having been committed in the giving of the instructions.

2. INSTRUCTIONS—*When Parties Estopped to Object.*—Where a party has given in his behalf, an instruction upon a certain doctrine, he will be estopped from questioning instructions upon the same doctrine given for the adverse party.

3. SAME—*Duplicates.*—It is not error to refuse an instruction where the same proposition of law is contained in other instructions given for the same party.

4. VARIANCES—*Must be Raised in the Court Below.*—The question of a variance between the pleadings and the proofs can not be raised for the first time in the Appellate Court.

5. MASTER AND SERVANT—*Defective Machinery—Promises to Repair.*—A railroad company furnishing an engineer with an unsound engine and inducing him to continue his work by a promise to repair it can not hold him to the exercise of an unerring choice of the best method of obviating difficulties and lessening dangers in operating it. If he uses reasonable and ordinary judgment it is all that can be required, and the fact that his judgment may not prove to be absolutely the best does not relieve his employer from liability.

6. SAME—*Effects of Promises to Repair Defects.*—When the master has knowledge of the defects, and promises to repair the same as soon as possible, he impliedly requests the servant to continue to work and that he, the master, will take upon himself the responsibility of any accident that may occur by reason of such defects within a reasonable time after such promise.

7. NEGLIGENCE—*Proximate Cause of an Injury.* –To constitute a negligent act the connection between the act and the result need not be such that the particular injury could have been foreseen. If injury in some form would be the natural sequence, the party guilty of negligence must be held as warned of the danger of his course and admonished of the necessity of guarding against liability for his negligence, and this is all the warning to which he is entitled under the law.

**Trespass on the Case,** for personal injuries. Appeal from the Circuit Court of Alexander County; the Hon. OLIVER A. HARKER, Judge, presiding. Heard in this court at the August term, 1895. Affirmed. Opinion filed March 7, 1896.

GREEN & GILBERT, attorneys for appellant.

BOYER & BUTLER, attorneys for appellee.

MR. JUSTICE SCOFIELD DELIVERED THE OPINION OF THE COURT.

The first judgment in this case was reversed for error in the instructions. I. C. R. R. Co. v. Creighton, 53 Ill. App. 45. The case has been tried again, and another judgment has been rendered in favor of appellee, and another appeal has been prosecuted to this court by the railroad company.

In contrasting the present with the former record, appellant says: "There is no change in the evidence, except in its volume. The change is in cumulative evidence. There is no conflict in the evidence on any question, except as to

whether appellee was using ordinary care at the time of, and immediately before, the accident."

Under this concession, it is unnecessary for us to do more than refer to our former opinion for a statement of the facts.

The only conflicting question of fact, according to appellant's admission, is whether or not appellee was exercising ordinary care at the time when he was hurt. There was, indeed, such a conflict of the evidence on this point, that the verdict of the jury in favor of appellee must be regarded as decisive of the question.

We have examined the instructions carefully, and have found no error in the giving or refusing of instructions. It is said that appellee's ninth instruction states the rule of comparative negligence, and that this is error, for the reason that the doctrine of comparative negligence is no longer a part of the law of this State. Without discussing this point, it is sufficient to say that the same doctrine is announced in appellant's tenth instruction, and that appellant is estopped from taking advantage of the alleged error. Springer v. City of Chicago, 135 Ill. 552. Nor was it error for the court to refuse certain instructions asked by appellant, for the reason that every proposition of law in the refused instructions which was applicable to the case was contained in some one of the seventeen instructions given at appellant's request. Weber Wagon Co. v. Kehl, 139 Ill. 644.

It is contended that the declaration is not sufficient to support the verdict under the evidence, because the allegations of negligence on the part of appellee are not sufficiently specific. The declaration alleges that appellant carelessly and negligently failed and refused to furnish appellee a safe, sound and suitable engine, and that the injury resulted from this neglect of duty. Now, if appellant thought that the unsoundness of the engine was averred too generally, it should have stood by its demurrer instead of pleading and submitting the issues to a jury. There is no variance. The accident did occur because the engine was unsound and unsafe, and upon this ground the judgment must be sustained,

if sustained at all. But even if there was a variance, the question was not raised in the court below, and can not now be raised in this court. I. & St. L. R. R. Co. v. Estes, 96 Ill. 470; Wight Fire Proofing Co. v. Poczekai, 130 Id. 139; Consolidated Coal Co. v. Wombacher, 134 Id. 57; C., B. & Q. R. R. Co. v. Dickson, 143 Id. 368.

The foregoing questions, however, are not the principal matters in controversy between the parties. Counsel for appellant argue vigorously that the unsoundness of the engine was not the proximate cause of the accident, that appellee was guilty of contributory negligence in plugging the holes in the cylinder and in improperly handling the engine, and that he assumed the hazards of the service by working with an engine which he knew to be dangerous. For either of these reasons, irrespective of any other, it is insisted that the judgment should be reversed. In other words we are asked to hold that appellee has no cause of action whatever.

Was the negligence of appellant in not furnishing a sound engine, the proximate cause of the injury? That appellant is charged with notice of the unsoundness of the engine is beyond question. But it is said that certain acts of the appellee constituted intervening causes, which broke the causal connection between the negligence of appellant and the injury.

If appellee had not plugged the cylinder holes, if he had not set the lever in front of the center, the accident would not have occurred; therefore, appellee's own act was the proximate or efficient cause of his injury. Such is the argument. But the jury have found that appellee was not guilty of negligence, and therefore that each of the acts mentioned was a proper and ordinarily careful effort on his part to remove or overcome difficulties arising from the negligence of appellant. In such a case, a railroad company, furnishing a servant with an unsound engine, and inducing him to continue his work by a promise to repair, can not hold that servant to the exercise of an unerring choice of the best method of obviating difficulties and lessening dan-

ger. If the servant uses reasonable and ordinary judgment, he does all that can be required, and the fact that his judgment may not prove to be absolutely the best, does not relieve the employer from liability. The unsound condition of the engine necessitated a choice between two evils; the inability to see on account of escaping steam, or some difficulty in handling the lever, on account of the plugging of the cylinder holes. Besides, there was evidence tending to show that appellant was chargeable with notice that the cylinder holes had been plugged. The jury found, in effect, that appellee did his duty in plugging the cylinder holes, and that this act was the natural sequence of appellant's negligence.

So with reference to the act of putting the lever in front of the center. Under the circumstances of the case, which sufficiently appear in the statement of the facts in our former opinion, the jury were justified in finding that the act in question was not negligence.

Now, if appellee had failed in his attempt to reverse the lever, and had been injured by a collision with the passenger train, appellant's negligence would have been the proximate cause of the injury. But it is said that appellee ruptured and otherwise injured himself in a successful effort to reverse the lever, and that such an injury received in such a manner could not have been foreseen or anticipated as the result of appellant's negligence, and that therefore appellant's negligence can not be regarded as the proximate cause of the injury.

There are at least two answers to this argument. In the first place, it is not the law that, to constitute a negligent act, the connection must be such that the particular injury could have been foreseen. If injury in some form would be the natural sequence of the negligence, the party guilty of negligence is warned of the danger of his course, and admonished of the necessity of guarding against liability for his negligence, and this is all the warning to which he is entitled under the law. Such is the law as laid down in Pullman Palace Car Co. v. Laack, 143 Ill. 242. We quote from the opinion, on p. 260, as follows:

"We said in the Fent case, that so far as the case turned upon the issue of remote or proximate cause, the jury should be instructed that if the loss is a natural consequence of the alleged carelessness, which might have been foreseen by any reasonable person, the defendant is responsible, but is not to to be held responsible for injuries which could not have been foreseen or expected as the result of the negligence. This is not to be understood as requiring that the particular result might have been foreseen, for if the consequences follow in unbroken sequence from the wrong to the injury, without an intervening efficient cause, it is sufficient if, at the time of the negligence, the wrongdoer might, by the exercise of ordinary care, have foreseen that some injury might result from his negligence. Baltimore, etc., Railroad Co. v. Keen, 61 Md. 154; Milwaukee, etc., Railroad Co. v. Kellogg, 94 U. S. 469; Terre Haute, etc., Railroad Co. v. Buck, 96 Ind. 346, and the cases collected; 4 Am. and Eng. Ency. of Law, 42; Consolidated Ice Machine Co. et al. v. Keifer, 134 Ill. 481; La. Mut. Ins. Co. v. Tweed, *supra;* Miller v. St. Louis, etc., Railroad Co., 90 Mo. 389; Kellogg v. Chicago Railroad Co., 26 Wis. 223; Smith v. London, etc., Railroad Co., L. R., 6 C. P. 21; Bevan on Negligence, 80–81. Thus, in the Keifer case, *supra*, it could not be foreseen that the particular injury might follow the placing of the tank upon an insufficient support. It might have fallen and injured no one, or a person other than appellee's intestate. It was held sufficient that the support was so insufficient that injury might result from the falling of the tank."

Other cases which have a bearing on the question are Weber Wagon Co. v. Kehl, 139 Ill. 644; Anderson Pressed Brick Co. v. Sobkowiak, 148 Id. 573; Drop Forge and Foundry Co. v. Van Dam, 149 Id. 337.

In the second place, it is worthy of notice that the act of appellee in reversing the lever, to his own injury, should be regarded as having been done by appellant's command. It is taken for granted, as the jury have found, and were justified in finding, that appellee was in the exercise of ordinary care from first to last. This being true, he was confronted

with an extraordinary situation. The forward movement of the engine threatened the wrecking of a passenger train, and a consequent loss of property, and a possible destruction of the lives of innocent persons. The pecuniary loss to the railroad company might have been very great. In such case it was the duty of appellee to make an extraordinary effort to stop the engine. This means that if the highest officials of the road had been present, they would have cried out: "Stop that engine at all hazards!" The word duty indicates that the command, though not expressed in words, was at least implied. Without negligence on his part, appellee was injured in the discharge of his duty, which duty devolved upon him because of the negligence of his superior, and this negligence was the proximate cause of the injury.

The question of contributory negligence has been sufficiently touched upon already, and will not receive further attention in this opinion.

One other question remains to be considered. Did appellee, by using the engine which he knew to be unsafe, assume the hazards of this part of the service?

On each of the 11th and 12th days of March, appellee obtained a promise from the proper agent of the company, that the engine would be repaired that night; but the promise was not fulfilled in either instance. The injury was received about half past nine on the morning of the 13th. It is conceded that if the injury had been received while either promise was in effect, or if a new promise had been made on the 13th, before the accident, the promise would have justified appellee in continuing to use the unsafe engine. Missouri Furnace Co. v. Kehl, *supra*. In Anderson Pressed Brick Co. v. Sobkowiak, *supra*, the reason for the above rule is stated in the following language:

"The reason for this exception may be stated to be that when the master has knowledge of the defects, and promises to repair the same, he impliedly requests the servant to continue to work; and that he, the master, will take upon himself the responsibility of any accident that may occur during the period."

It is true that the promise on the 12th was to repair the engine that night, but the engine was not repaired, and the injury was received on the morning of the following day. But the promise to repair that night, made on the 11th and repeated on the 12th, merely showed an intention to repair as soon as possible, without an absolute limitation to that particular time. Surely it will not be contended that appellant's agent intended to say that if the engine was not repaired that night, it would not be repaired at all. The gist of the promise was that the engine should be repaired without delay, and appellee was justified in regarding this promise as continuing for a reasonable time beyond the night of the 12th. Drop Forge & Foundry Co. v. Van Dam, *supra.*

We have found no error in the record, and therefore the judgment is affirmed.