## The Chicago, Rock Island & Pacific Railway Company v. Arthur Clark.

### Gen. No. 13,152.

1. ASSUMED RISK—*how question of, to be determined.* Whether an injured servant assumed the risk of the danger from which his injury resulted, is, ordinarily, a question of fact for the jury. Such question, however, under certain conditions named in this opinion, becomes one of law to be determined by the court.

2. ASSUMED RISK—*how long servant may rely upon promise to repair.* A promise to repair by a specific date may justify the servant in continuing at his employment beyond such date.

3. INSTRUCTION—*propriety of refusing, telling jury to regard the law and the evidence.* It is not error to refuse to instruct the jury that it is their duty to regard the law and the evidence. Such an instruction is unnecessary and superfluous.

Action in case for personal injuries. Appeal from the Superior Court of Cook county; the Hon. MARCUS KAVANAGH, Judge, presiding. Heard in this court at the October term, 1906. Affirmed. Opinion filed May 31, 1907.

**Statement by the Court.** This is an appeal from a judgment for $10,000 against the appellant in favor of the appellee in the Superior Court of Cook county. There have been two trials of the cause below, the first resulting in a verdict for $12,500. A new trial was granted and the verdict on the second trial was $10,000. After a motion for a new trial and a motion in arrest of judgment had been overruled, judgment was rendered on the verdict.

The plaintiff below, the appellee here, was injured in the shops of the appellant company in Chicago, December 24, 1901. He lost his left arm just below the el-

bow.  He was eighteen years old on December 3rd of the same year.

The declaration on which the cause was tried charges the defendant with assigning the plaintiff while in its employ to operating a planing machine which was propelled with steam power and which had the power communicated to it by means of pulleys, belts, gearings and shafting, in so bad and defective a condition that on account thereof a certain belt running from said pulleys to said power caused said planer to start into operation automatically without the knowledge of the person in charge of the same.

It further alleges that prior to the day of the accident this defective condition was reported to the defendant, and the defendant promised to remedy said defective condition, and that thereupon the plaintiff was induced to and did continue to operate said planer for a period of one week after the defendant had made said promise, but that on the day of the accident the planer was set into operation without warning or notice to the plaintiff, and the plaintiff's arm thereby caught, crushed and thus severely injured by the planer.

Another count avers that the plaintiff was engaged under the employment of the defendant in the operation and management of the planer, and that the steam engine, gearing, belting, shafting and planer were so carelessly, negligently, insecurely and improperly set and maintained, that by reason of the neglect of the defendant certain pulleys, shafting, gearing, shifters, hangers and other devices connected with the operation of the planer were permitted to be and remain so loose and bent, and of such improper construction and condition that said planer was apt to put itself into operation after the same had been placed out of gear, all of which was known to the defendant, and the plaintiff, while in the exercise of due care for his own safety, and within a reasonable time after a promise of the defendant to repair said machinery, became caught and entangled in the planer and lost his arm.

To this declaration the defendant pleaded the general issue.

At the trial the defendant made a motion at the close of the plaintiff's evidence and at the close of all the evidence, for a peremptory instruction to the jury to find a verdict of not guilty. The denial of these motions is assigned and argued in this court for error, as are also the alleged admission of improper and exclusion of proper evidence. It is also insisted that the verdict is against the weight of the evidence, and that a new trial should have been for that reason granted.

BENJAMIN S. CABLE, for appellant.

KRUSE & PEDEN, for appellee.

MR. PRESIDING JUSTICE BROWN delivered the opinion of the court.

It is vigorously argued by appellant's counsel, as the basis of his complaint of the judgment appealed from in this cause, that the peremptory instruction for the defendant asked for at the close of the plaintiff's evidence, should have been given, on the ground that it showed that under the law the plaintiff, Arthur Clark, assumed the risk of the danger that resulted in his injury.

The consideration of this point requires a review of the evidence.

The plaintiff, Clark, entered the employment of the defendant company at sixteen years of age. He had before so entering no experience with machinery. He entered the machine shop as an apprentice. He was employed to sweep the shop, operate a drill press and do general work. Two or three months before the injury for which he has recovered damages in this case, he was assigned to a certain planer called the shoe and wedge planer, and ran it continuously up to the time of the accident. The planer in question was an intricate piece of machinery. The plaintiff testified that his practice was to shut off the action of the planer by

means of a long piece of wood, called a shifter, suspended from the ceiling and connected with the machine. He had been shown how to start and how to stop the planer, but this was all the special instruction he had received concerning it. Several times, he says, during the two or three months he had worked on the machine, it had started up automatically. About a week or ten days before the accident the plaintiff complained of this to his foreman, Hauck. To use the plaintiff's own words: "I got Jack Hauck and I showed him the machine and told him I was afraid to run it and I didn't want to run it; I said I wanted a new machine. I told him it was dangerous, and he told me to go back to the machine and he would make a new one on me Sunday." On cross-examination he was asked: "You did complain of the machine starting up of its own accord?" and answered, "Yes." Counsel then said (slightly varying statement of the plaintiff in the direct examination): "Q. He said, 'Go back and I will have a new machine for you by Sunday?'" and was answered, "Yes, sir." Further on in the cross-examination the witness was asked: "When was the first time you noticed it start up, with reference to the accident?" He answered, "I guess I was working on the machine about a week or three days the time it started up on me, and I clamped down a driving box and it pulled the driving box pretty near off." Further questions and answers followed, thus:

"Q. When did it start up again? A.* * * Two or three weeks after.

Q. You had trouble with it starting up off and on all the time you had it? A. I could not say all the time, * * * maybe some days it would not start up at all, and other times it would start up at noon time; I could not tell you just when.

Q. Might start up any old time? A. Might start any old time."

This automatic, unforeseen and improper starting of

.the machine, at times was also testified to by other witnesses for the plaintiff—by Edward Calonder, a fellow workman in the shop, and by George Clark, a former machinist there. (This last testimony is omitted from the abstract.) Calonder also confirmed the plaintiff in his statement that plaintiff complained of the machine to the foreman. He swears that a week or nine days before the accident he heard the plaintiff, Clark, say to Hauck, ''I want to change or I want this machine fixed here,'' to which Hauck replied, ''Never mind, boy, go back; I will have a new machine for you there by Monday.''

Evidence was introduced for the plaintiff, tending to show that defects in various parts of the somewhat elaborate mechanical appliances connected with the planer—worn and unfit connections and improper relative location or alignment of parts of the machinery —may have contributed in differing and uncertain proportions to the improper action of the machine, the immediate cause of which was a belt moving or ''climbing'' automatically from a loose to a fixed pulley. But while these various defects and defective arrangements were shown to be matters naturally tending to such dangerous and improper working as resulted, it is not shown that the plaintiff could say, from experience or expert knowledge as to any one or more of them, that it or they were the defects or disarrangements which must be remedied to make the machine safe. The defect of which he complained was the automatic starting, or, in other words, that combination of causes, whatever they were, which made the belt ''climb.''

Neither plaintiff nor Calonder can tell what day of the week this conversation between plaintiff and Hauck took place. The accident happened on December 24, 1901. So, at least, it is alleged by the declaration and sworn to by the plaintiff, who seems, however, to have accepted the date from his counsel rather than from actual recollection. If this date be correct, as we assume it is, Dr. Tait's testimony is mistaken as to time. But Dr. Tait, too, apparently accepted a date

tendered in the question of counsel. December 24, 1901, was Tuesday, not Wednesday, as stated in the appellant's argument.

The manner of the accident was thus substantially detailed by the plaintiff "That morning I had a big job on the planer. I finished it up and took it off about half past eleven. When I took the work off I shut the planer off by the shifter. I pulled the shifter two feet or so straight up as far as it would go. Then I put on another job, and spent half an hour or more putting it on. Between twelve and one was the dinner hour, and I stopped work. At one o'clock I returned to the planer. I had not then quite finished setting up my job. I finished it and when I got it all set up, all my material on the table, I went to get a gear wheel from the planer bed where I kept it and my tools. I had been told to keep them there. It was customary to keep them there. The planer bed made a kind of a square box in the bottom. I put my left arm through the opening there was there between the edge of the planing table and the end of the machine, to take the gear wheel out, when the machine started up and the planing table backed up on my arm and crushed it." Dr. Tait, who was called, found fully two-thirds of the forearm so mangled that it required the amputation which he performed that evening.

The contention of the defendant corporation that after this evidence was given the cause should have been taken from the jury by a peremptory instruction to find for the defendant, is based on the position that there was an evident assumption of risk by the plaintiff. Counsel concede that plaintiff's "complaints and the promises by the foreman to remedy the defects within a fixed and definite time might suspend the assumption of risk during that time," but insist that "after the expiration of that time plaintiff assumed the risk as if no promise had been made."

The question whether an injured servant assumed the risk of danger, is ordinarily a question of fact for the jury. Such assumption of risk becomes a matter

of law to be asserted by the court, only, as we said in Grace & Hyde Company v. Sanborn, 124 Ill. App. 472, p. 487, when, "conceding all that the evidence tends to prove in favor of the plaintiff, it would be apparent to all reasonable minds that such dangers as the evidence thus tends to prove were incidental to and connected with his employment, that they were not concealed or latent but patent and obvious, that they were not extraordinary and unusual but usual and incident to the business engaged in as conducted by the defendant, and existed continuously during the plaintiff's employment, and when there is no evidence tending to show that plaintiff ever complained of them, or that the defendant had promised to remedy them, or that plaintiff had been ordered to incur them by some particular or special order at the time of the accident." Under these circumstances, if it is proven also that the plaintiff was at the time of the accident "engaged in the regular line of his duties and usual employment and that he was of mature age and of ordinary strength and intelligence, then the question whether he understood and appreciated the danger (such undertaking and appreciation being recognized by the Supreme Court as essential elements in the assumption of risk) is answered by a conclusive presumption and the assumption of risk becomes a matter for the court to assert as a matter of law—not a question of fact to be left to the jury."

The defendant insists that all these conditions are met in the present case with the exception that there is evidence tending to show that plaintiff did complain of the danger in question, and that the defendant had promised to remove it; but, as before indicated, it argues that as the promise of the foreman was a promise to remove the danger within a fixed and definite time, after the expiration of the time the whole situation was the same as though no such complaint or promise had been made.

It is unnecessary for us to discuss whether all the other conditions which would make this case one in

which the assumption of risk should have been held as a matter of law, were or were not met, for we do not agree with the contention of appellant concerning the effect of the complaint, promise and expiration of the time set by appellant for remedy.

The evidence tends to show that there were imperfections and defects not obvious and patent in the machinery and appliances, which the defendant was bound to furnish to the plaintiff in good repair and reasonably safe; that these imperfections and defects produced a dangerous condition of things, which was obvious; that the plaintiff complained of that obvious danger, not undertaking, however, to specify the particular imperfections and defects in the appliances; that the defendant, by its foreman, ordered the plaintiff back to the machine with a promise of a safe machine by the following Sunday—a day, of course, when the machinery was not to be in motion.

The words of the alleged promise vary somewhat in different versions in the evidence.

Plaintiff testified the foreman said, "he would make a new one on me Sunday," and afterwards assented to the cross-examining counsel's version—"He said, 'Go back and I will have a new machine for you by Sunday.' "

Calonder testified that the foreman said, "Never mind, boy, go back; I will have a new machine for you there by Monday."

The effect of this testimony is represented by appellee's counsel to be (appellee's argument, page 19) that the foreman said, "Go back to the machine; I'll make a new one of it by Sunday." While these were not the exact words given in either version in the record, we do not think they inaptly or inaccurately represent the evident meaning of the foreman's remark. What was said would hardly have been naturally interpreted by the plaintiff to mean that an entire new machine, so elaborate and complicated as the planer, was to be substituted for the old one, because of its auto-

matically starting at unexpected times; but that such changes, readjustments and repairs would be made as would in effect "make of it a new machine."

We do not think that the drastic and stringent doctrine which the defendant corporation urges, that because the defendant promised to repair by Monday and had not done so on Tuesday, the plaintiff had on Tuesday assumed the risk, notwithstanding the promise to repair; in other words, that because the foreman had not repaired on Sunday, the plaintiff was bound to suppose he never intended to do so, or at least did not intend to do so within a reasonable time, is sound as applied to the case at bar.

It is true that in Gunning System v. LaPointe, 212 Ill. 274, the opinion of the court contains the general statement—made wholly incidentally in the discussion of the subject of the effect of promises to repair—that "If the promise is to repair by a fixed time, then after the expiration of the time fixed the servant assumes the risk from the defects complained of;" but this was not applied to the case under discussion, or to any other particular instance. The real gist of the decision in the Gunning System case was that when there is no question of a fixed time within which the repairs are to be made, then "At and after the expiration of a reasonable time within which to make" them "if they are not made, and if the defects are open and known to the servant and no new promise is made and the servant continues the work, he assumes the risk incident to the defects of which he complained."

As in the Gunning System case the alleged promise fixed no time, the language just quoted expressed the point decided, while the preceding language about the promise to repair by a fixed time is *obiter dictum*. In its true meaning, as a general proposition, it is undoubtedly sound. We do not think, however, that the court meant that the character of the machine to be repaired, the circumstances under which the promise was made, the relation of the parties between whom

it was made, and all those things which throw light on how words are to be construed and understood, were to be disregarded in considering the question whether a servant subjected to dangers of which he had complained, is obliged in every case to consider a promise to repair by a certain day so literally that instantly on that day coming, be it soon or late, he must leave his job or assume all the risk of remaining. We are of the opinion that it is still a question whether the plaintiff was trusting for a reasonable or unreasonable time to the promise to repair. Under certain circumstances it might well be unreasonable to delay a moment beyond some specified time; in others, the "fixed time" might well imply some considerable grace beyond the very day named.

The whole context of the conversation might imply that an approximate rather than a precise time was meant.

The view we have presented is that which was taken in a precisely similar case by Mr. Justice Scofield of the Appellate Court in the Fourth District—I. C. R. R. Co. v. Creighton, 63 Ill. App. 165. The promise in that case was to repair an engine on the night of March 12th. The injury was received on the 13th. The court said: "The gist of the promise was that the engine should be repaired without delay, and appellee was justified in regarding this promise as continuing for a reasonable time beyond the night of the 12th."

There is an additional reason in the case at bar for not holding, as a matter of law, that plaintiff had assumed this risk after Sunday, the 22nd, in the direct and special order which the evidence tends to show was given him after his complaint, to go back to the machine to work.

In Anderson Pressed Brick Company v. Sobkowiak, 148 Ill. 573, the court, in speaking of the rule that a case might be taken out of the operation of the doctrine of assumed risk by a promise to repair, said: "The reason for this exception may be stated to be,

that when the master has knowledge of the defects and promises to repair the same, he impliedly requests the servant to continue to work and'' (implies) ''that he, the master, will take upon himself the responsibility of any accident that may occur during that period.''

If this be the true reason, it would be difficult to suppose that the implied taking upon himself by the master of the risk of anything injurious happening from the defects complained of was so limited to the precise moment as to end at twelve midnight on Sunday, the 22nd. If any element of reliance on this implied undertaking for a reasonable time after that precise moment was involved, we think it was for the jury to say whether that reasonable time included the day of the accident. If it were not, and were a question for the court, we should not be inclined to disturb its decision that it did.

Again, there is another and very strong reason why the proposition in the Gunning case, relied on by the appellant, cannot be considered applicable to the case at bar. That proposition clearly presupposes that the fact was entirely obvious to the injured party that no repairs and no additional precautions against the danger complained of had been made or taken between the promise and the injury. Such was the case in the Gunning case, in which the question of what was a reasonable time, when no time was fixed, seems to have been considered one for the court. But in the case at bar no such condition existed.

We do not find, in a careful search of the record, anything inconsistent with the hypothesis that the plaintiff in fact supposed that on Tuesday, December 24th, the planer had been so readjusted that the danger of automatic starting had been minimized or removed. It is, however, conceded, or rather claimed, by the appellant that there were no changes made in the planer or its adjustments before the accident nor since. The plaintiff was a minor, and although of some experience with machinery in connection with

his duties in the shop for several months, he had no special knowledge of machinery so far as appears, nor any such expertness as would warrant an assumption that he could at once determine by inspection that no change had been made in mechanism, adjustment or alignment, to remove a danger which might have been the result of a defect in any one or more of these things.

It is, however, further contended by the defendant that plaintiff was guilty of contributory negligence. This, defendant says, should have been held by the trial court as a matter of law, and the jury peremptorily instructed for this reason, if for no other. The contributory negligence of the plaintiff is said to be the inserting of his hand in the planer bed when no greater space existed between the edge of the table and the end of the machine, and his failure to use the foot trip to run the table back and give him more room. Under the evidence in the case as to the instructions given him about the place to keep his tools, as to the customs of the shop, and as to the condition of the foot trip and contingencies in its use, and perhaps even without evidence of any of these things, the question of contributory negligence was one for the jury.

Our conclusion is that there was evidence tending to prove the plaintiff's case, and that the trial court rightfully refused to take it from the jury.

Moreover, we do not think that the verdict is so against the weight of the evidence that a new trial should have been granted. The cause has been submitted to two juries with substantially the same result. All the instructions on the merits of the cause and the legal questions therein involved which the defendant asked for were given, the only instruction, except the peremptory one, which was refused being one on the duty of the jury to regard the law and the evidence. That instruction was unnecessary, superfluous and objectionable. Its refusal is not argued here to have been erroneous. No instructions were asked by the plaintiff.

We do not think that another trial would result differently.

We do not think the court erred in its rulings on evidence complained of. They seem to us to be correct, but they would not be reversible error if they were not.

Substantial justice has been done in this case, we think, and the judgment of the Superior Court is affirmed.

*Affirmed.*