## Boies *vs.* McAllister.

In an action for breach of promise of marriage, the opinion of witnesses not possessing any professional or peculiar skill, that the plaintiff was once in a state of pregnancy, was held to be inadmissible.

Evidence also that she was once *reputed* to have been in a state of pregnancy and endeavored to procure an·abortion, held to be inadmissible.

Certain letters from the plaintiff to the defendant held not to amount to a discharge of the latter from his promise of marriage.

The Court refused to disturb a verdict in favor of the plaintiff for $1200, on the ground of its being excessive; the defendant's property being estimated by the witnesses at from $1000 to $5000.

THIS was an action of *assumpsit*, to recover damages for an alleged breach of a promise of marriage. In defence, the defendant attempted to prove that the plaintiff had been in a state of pregnancy and that she had taken measures to procure an abortion. In some of the defendant's depositions, the deponents, none of whom were professional men, from having seen her person, expressed an opinion that the plaintiff had been in a state of pregnancy. This being objected to, was rejected by the presiding Judge; though he admitted all the facts upon which that opinion was founded. In going into the plaintiff's character, the Judge also excluded evidence that the plaintiff was *reputed* to have

Boies *v.* McAllister.

been in a state of pregnancy, or to have procured an abortion ; but admitted testimony as to the general character of the plaintiff for chastity.

The Judge was requested by the defendant to instruct the jury, that the plaintiff in her written correspondence with him, (recited in the opinion of the Court,) had discharged him from his promise, but the Judge declined so to instruct them.

A verdict was returned for the plaintiff for $1200, which the defendant moved to have set aside on the ground of its being excessive. The property of the defendant was estimated by the witnesses at from $1000 to $5000.

If the testimony excluded ought to have been received, or the instructions requested ought not to have been withheld, the verdict was to be set aside and a new trial granted ; otherwise judgment was to be rendered thereon, unless the verdict should be set aside on the ground of excessive damages.

*F. Allen,* for the defendant, argued in favour of the admissibility of the evidence rejected. The opinions alone, it is admitted are not evidence, but are so when accompanied by the facts upon which those opinions are founded. *Dickinson* v. *Barber,* 9 *Mass.* 225 ; *Buckminster* v. *Perry,* 4 *Mass.* 593.

The evidence also as to the repute of her having been pregnant, should have been received. This would have gone to affect the question of damages, independent of its justification for a breach of the contract.

The defendant's council also examined minutely the written correspondence between the parties, and endeavoured to show, that the defendant had been discharged from his promise.

He also contended that the damages were excessive.

*Tenney,* for the plaintiff, to the point of the inadmissibility of the opinions of the witnesses, cited, 1 *Phill. ev.* 227 ; *Hathorne & al.* v. *King,* 8 *Mass.* 371 ; *Dickinson* v. *Barber,* 9 *Mass.* 227.

That the evidence of the plaintiffs having been reputed to have been pregnant was properly rejected, 2 *Stark. ev.* 896 ; 1 *Stark.* 429 ; 1 *Bing.* 266 ; 2 *T. Rep.* 760 ; 4 *East,* 604 ; *Bass* v. *Bass,* 8 *Pick.* 187 ; *Parks* v. *Hall,* 2 *Pick.* 206 ; *Wightman* v. *Coates,* 15 *Mass.* 1.

The letters of the plaintiff were no discharge of the defendant, nor did he at the time consider them as such.

The question of damages, is one entirely for the jury. *Clark* v. *Binney,* 2 *Pick.* 113 ; *Bodwell* v. *Osgood* , 3 *Pick.* 379 ; *Taunton Man. Co.* v. *Smith,* 9 *Pick.* 11 ; *Ayer* v. *Bartlett,* 9 *Pick.* 156.

Weston C. J. — As to the supposed pregnancy of the plaintiff, the jury had all the facts bearing upon that question. We are not aware of any principle of law, which would justify receiving the opinion of the witnesses, that such was the fact. It does not appear that they had any professional or peculiar skill, which might have warranted the admission of such testimony.

Still more exceptionable was the evidence offered and rejected, that there were rumors, that she had been in that condition. They may have originated in slander, or may indeed have been set on foot, with a view to answer the defendant's purposes. Rumor is entitled to very little respect as a test of truth.

There may be found some cases of slander, which are based altogether upon an injury to character, in which evidence has been received, that the plaintiff had been suspected of certain crimes, by way of mitigation of damages. It may be difficult to reconcile these cases with the law of evidence ; and in *Bodwell* v. *Swan et ux.* 3 *Pick.* 376, which was an action of slander, testimony of this kind was, upon consideration, rejected ; although evidence of general character is undoubtedly admissible in such cases. If this had been an action of that class, we are by no means prepared to say, that evidence of rumors as to particular charges, could have been received ; but in an action of the kind now under consideration, we are referred to no precedent, nor do we believe that any exists, which would justify its admission.

The presiding Judge was requested to instruct the jury as matter of law, that the plaintiff had discharged the defendant from the obligation of his promise. We have looked into the correspondence, relied upon as having this effect. In her letters, she uses the language of expostulation. She speaks of her wounded feelings and disappointed hopes, and sometimes the stirrings of female pride are manifest, at his long neglect. In her letter of

the 12*th* of *July*, there does escape from her pen an intimation, that if he has no inclination to marry, it was her sincere wish, that he should not come for her. She then speaks of her bitter disappointment, and of her blighted prospects, and remonstrates with him for his unkindness. She closes by saying, " I do not wish to have you think I am impatient to be married. I feel perfectly willing to wait ; but the idea of being kept in suspense is no ways agreeable." In that of the 7*th* of *September*, she says, " I shall never get married — don't wish to — shall never be married, unless I marry you." Take the correspondence together, it is so far from manifesting a willingness to give him up, that she seems never to have entirely abandoned the hope, that he would fulfil his engagement.

With regard to the damages, we cannot pronounce them to be excessive. The defendant had violated his plighted faith with the plaintiff, trifled with her affections, and cruelly and without cause, attempted to asperse and destroy her character, in which he persevered, by way of defence, at the last trial in this court.

*Judgment on the verdict.*