## NEW YORK, CHICAGO & ST. LOUIS RAILROAD COMPANY v. ROBBINS, ADMINISTRATOR.

[No. 5,415. Filed December 15, 1905. Rehearing denied April 27, 1906. Transfer denied June 5, 1906.]

1. PLEADING. — *Complaint.* — *Railroads.* — *Negligence.*—*Different Acts of.*—*Whether Joint or Several.*—A complaint alleging that defendant railroad company negligently ran its train at an excessive rate of speed, that it failed to sound its whistle, that it failed to ring its bell, and that plaintiff's decedent was killed on defendant's highway crossing by reason of the negligence "as aforesaid," relies upon such negligent acts severally and not jointly, and proof of one of such acts sustains such complaint. *Southern R. Co.* v. *Jones,* 33 Ind. App. 333, distinguished. p. 174.

2. APPEAL AND ERROR.—*Weighing Evidence.*—*Railroads.*—*Signals.*—*Question for Jury.*—Where the evidence as to a railroad company's sounding its whistle at a highway crossing is conflicting, the verdict is conclusive on appeal. p. 176.

New York, etc., R. Co. *v.* Robbins—38 Ind. App. 172.

3. EVIDENCE.—*Positive.—Negative.—Weight.*—It cannot be held as a matter of law that the positive evidence of a witness of the happening of a fact is entitled to greater weight than the negative evidence of another witness that he was in a place to know of such fact if it had happened and that such fact did not take place. p. 176.

4. SAME.—*Judicial Notice.—Railroads.—Noise.—Presumptions.*— While the courts judicially know that a moving train makes a noise, the presumption does not exist that such noise is sufficient for an ordinarily prudent person to hear and avoid a collision at a highway crossing. p. 179.

5. NEGLIGENCE.—*Contributory.—Railroads.—Highway Crossings.* —Whether a wife riding in a wagon with her husband who was driving was guilty of contributory negligence in crossing a railroad after dark when she could have seen an approaching train only a portion of the time and might or might not have heard it by stopping and listening, is a question for the jury. p. 180.

6. SAME. — *Contributory.—Railroads.—Signals.—Care Required by Traveler.—Question for Jury.*—It is the duty of the traveler to watch in both directions on approaching a railroad crossing for passing trains, and the failure of such company to sound its whistle should be taken into consideration with all other facts by the jury in determining the question of contributory negligence. p. 180.

7. RAILROADS. — *Highway Crossings. — Traveler on Crossing. — Presumption.*—The presumption is that a traveler will not knowingly or voluntarily attempt to cross a railroad in view of imminent danger. p. 181.

8. SAME. — *Highway Crossings. — Signals. — Contributory Negligence.*—The failure by a railroad company to sound the statutory signals at a highway crossing does not relieve a traveler from the exercise of reasonable care. p. 182.

9. APPEAL AND ERROR.—*Instructions Requested Covered by Those Given.*—Where instructions requested are covered by those already given, a refusal to give those requested is not erroneous. p. 182.

10. NEGLIGENCE.—*Contributory.—Burden of Proof.—Evidence.*— The burden of proving contributory negligence is upon the defendant, but the whole evidence should be considered on such question. p. 182.

11. SAME.—*Contributory.—Imputing Husband's to Wife.*—Where a wife was riding in a wagon driven by her husband, the fact that she was the wife is not alone sufficient to impute his negligence to her and thus preclude her administrator from a recov-

ery for her death caused by the negligence of the railroad company.    p. 183.

12. NEGLIGENCE. — Contributory.—Imputing.—Railroads.—Highway Crossings.—A wife riding with her husband who controls the wagon is not thereby relieved from the exercise of ordinary care for her own safety in crossing a railroad.    p. 183.

13. EVIDENCE.—Photographs.—Photographs of a highway crossing when identified are admissible in evidence in a railroad crossing accident case, the point of view from which taken going to their weight as evidence and not to their competency. p. 183.

From Whitley Circuit Court; Luke H. Wrigley, Special Judge.

Action by Elam Robbins, as administrator of the estate of Bertha Sherburn, deceased, against the New York, Chicago & St. Louis Railroad Company. From a judgment on a verdict for plaintiff for $2,000, defendant appeals. Affirmed.

Walter Olds, N. D. Doughman, Charles M. Niezer and John H. Clarke, for appellant.

A. A. Adams, Bertram Shane, P. S. Webster, A. G. Wood and F. E. Bowser, for appellee.

ROBINSON, J.—In appellee's second paragraph of complaint for damages for the death of his decedent it is averred that appellant, by its servants, negligently

1.    drove the engine and train at an excessive and dangerous rate of speed; that the whistle was not sounded as required by statute; that the bell was not rung; and that the accident was caused by the "negligence of said defendant and its said servants as aforesaid." The complaint does aver several acts of negligence, but it does not proceed upon the theory that the injury was the result of the combined effect of all the acts of negligence charged. Negligence would be established by showing that appellant failed to give the signals required by statute, whether any other acts of negligence that might be charged should be made out by the proof or not. The fact that the pleading says that

the accident was caused by the negligence "as aforesaid," does not necessarily mean that the accident was caused by all the acts of negligence charged.

In *Southern R. Co.* v. *Jones* (1904), 33 Ind. App. 333, cited by appellant, the complaint alleged as negligence the use of defective brakes and running the train in excess of the speed limited by a city ordinance. The allegation was: "That by reason of the carelessness and negligence of said defendant in failing and neglecting properly and securely to supply said caboose with good, sound, safe, and secure appliances, whereby the speed of the same could be controlled, and by reason of the carelessness and negligence of said defendant in running its said train at such high rate of speed, to wit, twenty miles per hour, within the corporate limits of said city of Huntingburg, and thereby causing said collision as aforesaid, he received his said injuries, and not otherwise." It was held that the injury is stated to be due to the two causes named. The court recognizes the rule that, as a general rule, all acts of negligence averred need not be proved, but says: "It is not averred that the brake would have been insufficient to check the caboose if it had been going at the rate of only eight miles an hour [the ordinance rule]. It may be fairly inferred that if the caboose had not been going at an unlawful rate of speed the brakes would not have been insufficient, or that if the brakes had not been defective the high rate of speed could have been checked; in other words the high rate of speed rendered the brakes useless."

There is no necessary connection between the several acts of negligence attempted to be alleged, and there is nothing in the pleading to indicate that it proceeds upon the theory that all the alleged acts of negligence combined caused the accident. If the attempted averments of negligence, aside from the allegation of failure to give the statutory signals, should be omitted from the pleading, the averment that the accident was caused by the negligence

"as aforesaid" would be applicable. We see nothing in the pleading to take the case out of the general rule that has long prevailed that a plaintiff may plead in one paragraph different acts of negligence, and upon the trial it is sufficient if he prove such negligence charged as will establish his case, and this may be a single act of negligence. There was no error in overruling the demurrer to the second paragraph of complaint.

Under the motion for a new trial it is first argued that the evidence fails to show appellant guilty of negligence. The court instructed the jury that there was no evidence before them that would warrant them in finding for appellee on the ground that appellant was negligent as to ringing the engine bell, or as to the rate of speed at which the train moved as it approached the crossing. In another instruction the jury were told that the only ground upon which, if at all, appellant could be held liable, was negligence in failing to sound the whistle as required by statute.

The accident happened at a crossing east of the town of Kinzie. There is another north-and-south highway crossing in Kinzie. It is 2,855 feet between the two crossings. About 1,500 feet west of the east crossing, where the accident happened, is the whistling post for that crossing. Witnesses who lived at Kinzie and in the vicinity testified as to the sounding of the whistle. A number of witnesses testified positively that the whistle was sounded and that they heard it. Other witnesses testified that the whistle was not sounded, that they were where they could have heard it if it had been sounded, and that they did not hear it. It is insisted by counsel for appellant that the evidence of witnesses who testified that they did not hear the signals—and from that fact state that the signals were not given—is overcome by the positive evidence of witnesses that the signals were given. It cannot be said, however, that the testimony of all of appellee's witnesses

upon the question of signals was purely negative. One of these witnesses testified that as she approached the crossing on the north-and-south road she heard the signal for that crossing; that she saw the train and stopped ten or fifteen feet from the track and waited for the train to pass and immediately walked on and watched the train until it got out of sight; that she had gone just a little way when she heard the three whistles. Another witness, mother of the station agent, testified that she lived about seventy feet from the track just east of the station, and was sitting on her porch and saw the train go by. She heard it approaching from the west; it whistled for the west crossing; that she did not hear any whistle for this crossing, but heard it give three whistles; did not know what that meant, and walked out toward the railroad and saw the agent and asked him. Another witness testified that he was in a buggy, driving north on the north-and-south road, and was about eighty rods south of the railroad when the train passed through Kinzie; that it did not whistle for the east crossing; that it gave three sharp blasts after it passed the crossing; that he was paying particular attention to the train, as he was watching to see if his brother-in-law, who was traveling at that time, had come home that night; that he noticed to see if the train would whistle or if it was slacking in speed. It cannot be said that this evidence was of a purely negative character. The jury could properly give more weight to such testimony than to the testimony of witnesses who simply testified that they did not hear the signals, but were where they could have heard them had they been given. "It may be true," said the court in *Ohio, etc., R. Co.* v. *Buck* (1892), 130 Ind. 300, "in fact, that, under some circumstances, greater weight should be given to the positive statement of one witness than to the negative statement of another, but it depends upon the circumstances, and is not true as an abstract proposition of law." And in the case at bar the circumstances surrounding these witnesses

at the time when they say that the signals were not given take from their testimony something of its negative character, and while their testimony under such circumstances would not be entitled to as much weight as the testimony of witnesses who state positively that they heard the signals given, yet, with this evidence, it cannot be said that there was no evidence authorizing the jury to say that the signals were not given. As we view this testimony, we could not disturb the jury's conclusion without weighing the evidence, and this we cannot do. The following cut will doubtless be instructive:

Camera 117 feet north of center of crossing looking west, engine 1,500 feet west of center of crossing.

It is also argued that decedent was guilty of contributory negligence. At the crossing the highway and railroad form an angle of twenty-six and three-fourths degrees; the railroad running in a northwesterly and southeasterly direction over the highway running east and west. From the crossing the highway slopes to the east and at 100 feet is three and seven-tenths feet lower than the railroad. The fence on the north side of the highway was a rail fence, the right-of-way fence was wire, with a board at the top, and the wing fence west of the crossing and extending up

to the cattle-guard was a board fence about four feet high. The railroad is straight for 350 feet west of the crossing, and from that point curves toward the west in a two-degree curve, which ends about 1,200 feet west of the crossing. The grade of the railroad track rises as it goes west for about 1,500 feet and at 1,000 feet west of the crossing the track is eight feet higher than the crossing, and at 500 feet is four feet higher. There was a bank on the north of the railroad track to the west of the crossing, and between that point and a point 840 feet west the extreme height of the bank was nine feet above the rails; this height extended 175 feet, and then gradually receded to the east until it reached the line of the track west of the crossing. There was a bank six feet high on the south side of the track west of the highway. The telegraph poles were on the north side of the track. Decedent approached the crossing from the east, seated on a spring seat in an ordinary farm wagon drawn by two horses driven by her husband. Her eyes were about six feet from the ground. The accident happened about 7:30 o'clock in the evening of August 21. It was dark at the time. When last seen before the accident, and as they were approaching the crossing and were about sixty rods from the crossing, decedent and her husband were sitting on the spring seat of the wagon, the husband on the right and decedent on the left. The husband was driving, and decedent was carrying her child, about sixteen months old. All three were killed in the accident. Decedent lived about four miles north of Kinzie, and had crossed the crossing that morning going in the opposite direction. It does not appear that she was familiar with the crossing.

The jury find that the train was running fifty miles an hour. Cases are cited to the effect that a court must know that a train of cars passing over iron rails at that rate of speed does not do so without noise, and from this it is argued that it is presumed that the train

4.

would make sufficient noise for one of ordinary hearing to hear it far enough away to avoid a collision with it. If this presumption exists, there is no necessity for the statutory crossing signals. See *Pittsburgh, etc., R. Co.* v. *Burton* (1894), 139 Ind. 357, 375. Courts do know that such a train would make a noise, but they also know that whether the noise could be heard by one approaching the crossing and at what distance it could be heard depend upon circumstances and present conditions which at once suggest themselves and with which the traveler has nothing to do.

5. Without enumerating all the conditions existing at the time of this accident, but taking into consideration the topography of the country surrounding the place of the accident, the direction from the approaching train in which the decedent approached the crossing, the obstructions between her and the approaching train, all as disclosed by evidence, we cannot say as matter of law that she necessarily heard the approaching train in time to avoid the injury. There is evidence that as decedent approached near the crossing there were places from which a train approaching from the west could have been seen, and that there were places from which it could not have been seen.

6. It was the duty of decedent to watch for trains coming from the west and also from the east. The crossing signals were not given; and, while this did not excuse the decedent from the exercise of ordinary care, the jury had the right to take that fact into consideration in determining whether the decedent did exercise the degree of care required. At the rate of speed the train was moving it passed from the whistling post, where the signals should have been given, to the crossing in about twenty seconds. It is not shown at what rate decedent was traveling; but, accepting counsel's conclusion from the evidence that she was traveling five miles an hour, she was 150 feet from the crossing at the time the signals should have been given. Without these signals it cannot be said that she

must necessarily have heard the noise of the approaching train, had she listened. The jury find that for a part of the distance as she approached the crossing she could not see the headlight of the engine on account of the curve and embankments. At some points in this distance she could have seen the headlight if she had looked in that direction. But she was under no greater obligation to watch for trains approaching from the west than for trains approaching from the opposite direction. The presumption is that a person will not knowingly and voluntarily rush into danger, and, as the evidence in this case is not such that it can be said that decedent must have heard the train had she listened, and must have seen the train had she looked, in time to avoid the injury, we think the question of her contributory negligence was properly left to the jury.

7.

Evidence was introduced to the effect that from certain points in the highway the track of appellant's road could be seen for certain distances, and it is argued from this that the approaching train could have been seen by decedent had she looked for it. The jury also answered a number of interrogatories concerning the same matters, but these answers are not altogether uncontradictory and conclusive. "It does not necessarily follow," said the court in *Massoth v. Delaware, etc., Canal Co.* (1876), 64 N. Y. 524, "from the fact that a skilled engineer can demonstrate that from a given point in a highway the track of a railroad is visible for any distance, that an individual in charge of a team approaching the track is negligent because he does not from the same point see a train, approaching at great speed, in time to avoid a collision; and it is not enough to disturb a verdict of a jury in this court, in which legal errors only can be corrected, that the questions of fact are doubtful and that a different result might have been reached." In the case at bar there is evidence in the record sustaining the

general verdict of the jury which finds the question of decedent's contributory negligence in appellee's favor.

The only objection made by counsel to the ninth instruction given to the jury is decided adversely to appellant in *Pittsburgh, etc., R. Co.* v. *Martin* (1882), 82 Ind.
8.    476; *Indianapolis, etc., R. Co.* v. *McLin* (1882), 82 Ind. 435; *Louisville, etc., R. Co.* v. *Williams* (1898), 20 Ind. App. 576, and cases cited. See *Chicago, etc., R. Co.* v. *Hedges* (1886), 105 Ind. 398. This instruction is quite long, but it tells the jury the care required of the decedent as she approached the crossing, and that the failure of the appellant to give the signals required by statute did not relieve decedent from the exercise of such care.

Instructions two, eleven, fourteen and sixteen, requested by appellant, correctly state the law, but the sub-
9.    stance of each of these instructions is contained in instructions eight and nine given to the jury.

In instruction eight the court properly told the jury that contributory negligence is a matter of defense which may be proved under the general denial, the burden of
10.    proving which rests upon the appellant; that whether there was negligence on the part of decedent that contributed toward producing her death, or negligence on the part of the husband which was imputable to her and which contributed toward her death, were matters as to which the burden of proof was upon appellant, but they were matters to be determined upon the whole evidence; and that if decedent was guilty of contributory negligence, or if her husband was guilty of negligence which was imputable to her, and which contributed to her death, appellee could not recover and the jury must find for appellant, even though they should find that appellant was negligent in failing to sound the whistle, and that such negligence was the proximate cause of the death of appellee's decedent.

If, in this case, the decedent's husband was negligent, a point we need and do not decide, and the decedent is charged with the consequences of his negligence, it must be solely and alone because of that relationship. The complaint avers that the horses were driven by and were under the management and control of the husband, decedent "having no control of her said husband and no control or management of said horses and wagon." It is true the husband and wife may sustain such relations to each other that the negligence of one will be imputed to the other. But there is no evidence of any such relations in this case. All that is shown is the existence of the marriage relation, and that relation alone cannot have that effect. *Louisville, etc., R. Co.* v. *Creek* (1892), 130 Ind. 139; *Miller* v. *Louisville, etc., R. Co.* (1891), 128 Ind. 97. See *Town of Knightstown* v. *Musgrove* (1888), 116 Ind. 121.

The fact that decedent was riding with her husband, who had entire control of the team, did not relieve her of the duty of exercising care for her own safety; and in the cases of *Aurelius* v. *Lake Erie, etc., R. Co.* (1898), 19 Ind. App. 584, and *Lake Shore, etc., R. Co.* v. *Boyts* (1897), 16 Ind. App. 640, liability was denied, not on the ground that the negligence of the driver was imputed to the injured person, but that the injured person himself failed to exercise the care required of a person approaching a crossing.

There was no error in admitting in evidence certain photographs of the crossing and surroundings. The witness who took the photographs testified that they were correct reproductions of the surroundings as they were then. The points from which the photographs were taken would go to their value as evidence in the particular case, but not to their admissibility, where a witness testifies that they are correct reproductions of the surroundings. *Miller* v. *Louisville, etc., R. Co.* (1891),

128 Ind. 97; *Keyes* v. *State* (1889), 122 Ind. 527; *Huntington Light, etc., Co.* v. *Beaver* (1905), 37 Ind. App. 4.

Judgment affirmed.