## KNICKERBOCKER ICE COMPANY *v.* GRAY.

[No. 21,077. Filed April 9, 1908. Rehearing denied December 11, 1908.]

1. PLEADING.— *Complaint.— Specificness.— Master and Servant.— Powers.*—A complaint by a servant alleging that the master "through its lawfully authorized agent, * * * who was its chief engineer in charge of all of its engines and machinery, * * * and whose orders he [plaintiff] was at the time bound to obey, negligently * * * ordered" plaintiff to do certain work in a dangerous engine-room, to plaintiff's injury, sufficiently shows the character of negligence charged against defendant, an allegation of the extent of the authority and duty of such chief engineer being unnecessary since such is within defendant's peculiar knowledge. *Pittsburgh, etc., R. Co.* v. *Adams,* 105 Ind. 151, distinguished. p. 401.

2. SAME.—*Complaint.—Master and Servant.—Line of Duty.*—An allegation, in an action by a servant against his master, that such servant in obedience to defendant's order, given by defendant's chief engineer, and which plaintiff was bound to obey, went into a dangerous place, sustaining injuries thereby, does not show

that the action was founded upon section one of the employers' liability act (§8017 Burns 1908, Acts 1893, p. 294), since such allegation was necessary to show that plaintiff was in the line of his duty when injured. p. 402.

3. PLEADING.—*Complaint.—Master and Servant.—Several Acts of Negligence.*—A servant's complaint against his master alleging that the master, through its chief engineer ordered plaintiff to do certain work in an engine-room, that defendant negligently kept the floor of such room in a slippery condition, negligently permitted it to remain in a sloping condition, negligently failed to notify plaintiff thereof, negligently failed to light same, that plaintiff knew nothing of such conditions, that defendant's chief engineer, whose order plaintiff was bound to obey, ordered plaintiff to leave his own work and to do certain work in such room, and that because of such acts plaintiff was injured, states a common law cause of action, and properly includes the several acts in one paragraph. p. 402.

4. ACTION.—*Number of Recoveries.*—The plaintiff, in a personal injury case, can have but one recovery, and but one cause of action. p. 402.

5. PLEADING.— *Complaint.— Motions to Paragraph.—* The plaintiff, in a personal injury case, may elect to plead the several acts of negligence committed by defendant in a single or in separate paragraphs, and a paragraph alleging all acts severally is not subject to a motion to paragraph. p. 403.

6. MASTER AND SERVANT.—*Safe Place.—Latent Defects.—Outside Work.—Notice of Dangers.*—It is the duty of the master to exercise ordinary care to provide for the servants a safe place in which to work, to notify servants of latent defects, and, if servants are ordered to do work outside of the scope of their employment, to warn them of the dangers incident thereto. p. 403.

7. PLEADING.—*Complaint.—Master and Servant.—Scope of Employment.—Injuries in Work Outside of.*—A complaint alleging that the plaintiff was ordered to do certain work, outside of the scope of his employment, in an engine-room the floor of which defendant, without plaintiff's knowledge, permitted to remain in a slippery and sloping condition and that defendant knew thereof, and in the performance of such work, the plaintiff sustained injuries by reason of such conditions, is sufficient. p. 403.

8. EVIDENCE.—*Use of Oil Pans and Drains.—Custom.—Master and Servant.*—In an action by a servant against an ice manufacturing company on account of injuries received from slipping on a greasy floor in its engine-room, evidence by the chief engineer that the use of oil pans and drains is customary in such cases is admissible, any particular reason against their practicability in the case being a subject for development on cross-examination. p. 404.

Knickerbocker Ice Co. *v.* Gray—171 Ind. 395.

9. EVIDENCE.—*Reputation of Person as Chief Engineer.*—*Best Evidence.*—Evidence that a certain person was reputed as the defendant company's chief engineer is improper, unless primary proof of the fact is not obtainable. p. 405.

10. APPEAL.—*Improper Admission of Evidence.*—*Harmless Error.*— The improper admission of evidence that a certain person was reputed as defendant company's chief engineer is harmless, where defendant, in the answers to interrogatories, testified that such person was its chief engineer. p. 405.

11. EVIDENCE.—*Character of Employment.*—*Chief Engineer.*—To the question: "What was your employment with the [defendant] at this time?" the answer, "I was 'chief engineer,'" is responsive and permissible. p. 406.

12. SAME.—*Inferences from Servant's Rank.*—Power of control is not necessarily deducible from the mere fact that one servant is superior in rank to another. p. 406.

13. SAME.—*Duration of Defect.*—*Subsequent Explanations.*—Where a witness was asked how long the floor of a certain room, in which plaintiff was injured, had been sloping, and he answered that the year before they dug under the corner, and immediately afterward stated that such digging caused the floor to slope, it was proper to refuse to strike out such answer. p. 406.

14. SAME.—*Depositions.*—*Leading Questions.*—*Discretion in Striking Out.*—Where the trial court overruled a motion to strike from a deposition the question: "Well, state whether you had charge of the men connected with the engines and machinery there," and the answer thereto: "I did, I had full charge," no abuse of discretion is shown. p. 406.

15. MASTER AND SERVANT.—*Fellow Servants.*— *Vice-Principals.*— *Evidence.*—Where the evidence shows that a certain person had charge of defendant's engine-room, that he ordered the work done therein, superintended the work, hired and discharged men therein, and that he ordered plaintiff to do certain work wherein plaintiff sustained injuries, the jury is justified in finding that such person was a vice-principal, and, therefore, that defendant was liable. p. 407.

From Laporte Superior Court; *James F. Gallaher,* Special Judge.

Action by George Gray against the Knickerbocker Ice Company. From a judgment for plaintiff, defendant appeals. *Affirmed.*

*Stuart MacKibbin* and *Wilfred H. Card,* for appellant.
*Crumpacker & Moran,* for appellee.

MONTGOMERY, J.—This is an appeal from a judgment of $9,000 recovered by appellee for a personal injury sustained on account of negligence while in appellant's employ. A former judgment was reversed by this court (*Knickerbocker Ice Co.* v. *Gray* [1905], 165 Ind. 140), and thereafter the complaint was amended and the issues reformed. The first paragraph of amended complaint, in substance, alleged that, at the times stated, appellant was a corporation, engaged in the ice business, and the owner and operator of three ice-houses on the shore of Wolfe lake, and of the machinery, engines and appliances used in connection therewith; that in the months of January and February, 1901, there were two steam-engines which furnished the motive power for running the machinery in one of these ice-houses, designated as No. 3; that the larger of these engines was situated in a brick engine-room adjacent to the ice-house, and the other in a smaller house located about two hundred fifty feet therefrom, and furnished power to run a slush carrier; that on February 21, 1901, appellee was, and had been continuously for more than one month prior thereto, employed by appellant as stationary engineer in charge of the larger of said engines, that it was his sole duty to run and care for the same, and he had no connection with or control over the smaller or slush carrier engine, which was in charge of a separate and independent engineer; that for four weeks prior to the accident appellant negligently and carelessly permitted its slush carrier engine to become defective and unfit for use, in that its bearings, journals and slides were loose, worn out and defective, its oil-cups and holders leaky and defective, and that said engine was without oil pans and drains to catch waste oil, which equipment is necessary and usual; that for many months prior to the date of the injury appellant negligently and carelessly permitted the floor on the west side of said engine to become irregular, sloping from the base of the engine towards the west side of the engine-room, and, on account of the condition of said

engine, said sloping floor became covered with a thick coating of grease and oil, and on said date, and for more than a week prior thereto, on the west side of said engine and for a distance of more than two feet therefrom, there had been oil upon the floor one-half inch in thickness; that said engine was used in the reverse motion, which caused the counterbalances to revolve within a quarter of an inch of the side frames of the engine; that the movement of the counterbalances, and the sloping and slippery condition of the floor, made the engine-room extremely dangerous and unsafe, and created an extraordinary and unusual condition not to be expected or anticipated; that appellant actually knew of said conditions, and the extraordinary dangers and risks arising therefrom, for more than a week prior to appellee's injury, and might have repaired said floor and engine and made the same safe, but wholly neglected and failed so to do, and negligently and carelessly continued to use said engine, and negligently permitted said grease and oil to remain and to accumulate on said floor; that appellee did not know of any of said conditions, nor of the extraordinary dangers and hazards arising therefrom, and appellant knew, or ought to have known, that appellee was ignorant of said conditions and extraordinary dangers; that said engine-room was dark and poorly lighted, so that the presence of said oil on the floor was not discoverable by the exercise of ordinary care; that on February 21, 1901, appellant, through its lawfully authorized agent, Ernest Hart, who was its chief engineer in charge of all of its engines and machinery, under whom appellee was working and whose orders he was at the time bound to obey, negligently and carelessly ordered appellee from his usual place of employment into the dangerous engine-room, and negligently and carelessly failed to give him any notice of the extraordinary dangers and hazards in said engine-room and of the fact that the engine was defective, old and worn out, and the floor sloping, oily and greasy; that appellee had no knowledge of these facts and

conditions, as appellant well knew; that in obedience to said order appellee went into said engine-room and upon said oily, greasy, sloping and unsafe portion of the floor, and near to said downward revolving counterbalances, and while in said room, and in the performance of his duties, appellee's feet slipped from under him, on account of the greasy and slippery condition of the floor, and in falling he was thrown against the engine, and his arm caught between said counterbalances and crushed off at a point above the wrist, all of which is alleged to be the result of appel-- lant's negligence in permitting the floor to be and remain in the condition described and the engine to be operated in the backward or reverse motion.

The third paragraph of amended complaint is substantially the same as the first, but omits the charge that appellant negligently and carelessly failed to give appellee any warning or notice of the extraordinary dangers to which he would be exposed by entering the .slush carrier engine-room. It is alleged that appellee's injuries were caused by the negligence and carelessness of appellant in permitting and suffering the engine-room floor on the west side of the engine to become, be and remain sloping, and slippery from the presence of oil, which condition was caused by the defective and ill-kept condition of the engine, and because of the fact that. appellant negligently and carelessly operated said engine in the backward or reverse motion in such manner that the counterbalances revolved from above downward.

Appellant's motions to make the complaint more specific and to separate the causes of action pleaded, and its demurrer to each paragraph upon the ground of insufficient facts, were successively overruled. Appellant answered by general denial, and a jury trial resulted in a verdict for appellee, upon which, after overruling a motion for a new trial, judgment was rendered.

The errors assigned and urged upon our consideration, challenge the decisions of the court in overruling appel-

lant's motion to require each paragraph of the amended complaint to be made more definite and specific, the motion to require appellee to state in separate paragraphs and number his several causes of action, the demurrer to each paragraph of amended complaint, and the motion for a new trial.

Each paragraph of the amended complaint alleged that, in obedience to an order of defendant's authorized agent, Ernest Hart, who was its chief engineer in charge of all of its engines and machinery, and whose orders appellee was at the time bound to obey, plaintiff was taken from his usual place of employment and sent into the engine-room, averred to be unsafe and dangerous. Appellant sought to have this part of the complaint made more specific, by showing the position occupied by Hart in appellant's service, his relation to appellant and to appellee, and the power, duty and authority delegated to him by appellant. In support of this motion appellant cites and relies upon the case of *Pittsburgh, etc., R. Co.* v. *Adams* (1886), 105 Ind. 151. In that case the allegation was not, as in this, that the defendant did the negligent act, but only that plaintiff was "ordered by Patrick Clary, a person standing towards plaintiff in the relation of superior in the employ of defendant," and the court very properly said at page 169: "It does not necessarily follow that because the persons giving the orders stood towards appellee in the relation of superior in the employ of appellant, they had authority, or the semblance of authority, to order him to do the braking and coupling. They may have been superior in rank, and yet without authority, or the semblance of authority, to give such orders."

The charge in this case is that appellant issued the negligent order, and communicated it through Hart, its authorized agent, to whose orders and directions appellee was bound to yield obedience. This was clearly sufficient as a

matter of pleading to apprise appellant of the charge which it was required to meet. Appellant is presumed and held to know what officers and agents it had in connection with this ice plant, and the duty and extent of authority assigned to each, and it is a well-settled rule that the plaintiff is not required to plead specifically facts which are peculiarly within the knowledge of the defendant. *Louisville, etc., R. Co.* v. *Crunk* (1889), 119 Ind. 542, 12 Am. St. 443; *Indiana Bicycle Co.* v. *Willis* (1897), 18 Ind. App. 525. It follows that the court did not err in overruling the motion to require the complaint to be made more specific.

The motion to paragraph the complaint alleged that each of the paragraphs of amended complaint contained four separate and distinct causes of action, to wit: Common-law actions (1) for failure to furnish a safe place in which to work, and (2) failure to furnish safe machinery with which to work; and statutory actions (3) for the negligence of appellant's servant to whose order appellee was bound to and did conform, and (4) injury resulting to appellee while obeying the particular instructions of a person delegated with the authority of appellant in that behalf.

No attempt was made to state a cause of action under the employers' liability statute, but the allegations with respect to the orders of Hart were material and necessary to show that when injured appellee was working in the line of his duty. *Ft. Wayne Iron, etc., Co.* v. *Parsell* (1907), 168 Ind. 223.

The cause of action pleaded was one at common law, and might be predicated upon as many separate or concurrent acts of negligence as the pleader deemed operative in producing the injury described. Appellee could have, at most, but one recovery, and, accurately speaking, had but one cause of action, but had the right of electing to plead it in different forms, and in separate paragraphs, if the facts were such that the accident might be attributed to more than one act of negligence. It

was his privilege also to include in his complaint as many acts as he thought in any way contributed toward producing the accident, without making such complaint amenable to a motion to separate the same into independent paragraphs. *Pittsburgh, etc., R. Co.* v. *Lightheiser* (1907), 168 Ind. 438; *Chicago, etc., R. Co.* v. *Barnes* (1905), 164 Ind. 143; *New York, etc., R. Co.* v. *Robbins* (1906), 38 Ind. App. 172; *Southern Ind. R. Co.* v. *Hoggatt* (1905), 35 Ind App. 348.

The duty and obligation of the master to provide and maintain a safe place and safe appliances for the performance of the work assigned to his servant is elementary. The employer is likewise bound to disclose to the employe any latent defects and dangers of which he has knowledge, or ought to have had knowledge by the exercise of reasonable care, and which are not known to or discoverable by the employe in the exercise of reasonable care on his part; and if the master directs the servant to perform work outside of the scope or place of his usual employment he is under the same obligation to instruct and warn him of the dangers incident to such special service. The complaint in this case is founded upon these well-settled principles. It was alleged, as already shown, that appellee was taken from his usual duties and place of work, and directed by appellant to perform a particular service in an engine-room at another place, which, by reason of the reverse movement of the engine and counterbalances thereon, and the sloping and slippery condition of the floor described, was extremely unsafe and dangerous. That these unusual conditions and dangers were known to appellant and unknown to appellee, and were such as could not have been reasonably anticipated or expected by him, and on account of the darkness in said room could not be discovered and avoided. The allegations of each paragraph of the amended complaint were clearly sufficient, and the court rightly overruled appellant's demurrer thereto for

want of facts.  *Annadall* v. *Union Cement, etc., Co.* (1905), 165 Ind. 110; *Republic Iron & Steel Co.* v. *Ohler* (1903), 161 Ind. 393; *Louisville, etc., R. Co.* v. *Kemper* (1899), 153 Ind. 618; *Louisville, etc., R. Co.* v. *Hanning* (1892), 131 Ind. 528, 31 Am. St. 443; *Pennsylvania Co.* v. *Brush* (1892), 130 Ind. 347; *Louisville, etc., R. Co.* v. *Graham* (1890), 124 Ind. 89; *Krueger* v. *Louisville, etc., R. Co.* (1887), 111 Ind. 51; *Pittsburgh, etc., R. Co.* v. *Adams* (1886), 105 Ind. 151; *Baltimore, etc., R. Co.* v. *Rowan* (1885), 104 Ind. 88; *Hill* v. *Gust* (1876), 55 Ind. 45; *Chicago, etc., R. Co.* v. *Harney* (1867), 28 Ind. 28; *City of Ft. Wayne* v. *Patterson* (1900), 25 Ind. App. 547; 26 Cyc., 1165.  Appellant's motion for a new trial embraces 169 specific grounds, and it would manifestly be impractical to give separate consideration to each of these questions.  We will, therefore, accept the classification made in appellant's brief, and take the first of each group as representative of its class.

The following question was propounded by appellee to Ernest Hart, a witness on his behalf: "State whether or not such equipment as oil pans and drains are usual and customary to be used?"  To which he answered: "They are in most places."  Appellant moved to strike out the answer because the question was not limited to conditions similar to those existing in the engine-house in question, and the competency of the witness to testify was not shown.  The witness had testified that at the time of this accident he was chief engineer in appellant's service, and had been employed and connected with stationary engines and machinery of that kind at numerous places, continuously for fourteen or fifteen years.  He was clearly competent to testify upon the subject of the inquiry, and the question was not subject to the criticism advanced.  If any reason existed making the use of oil pans and drains unnecessary or inexpedient in this case, and justifying an exception to the general rule, it was proper matter to be developed and shown on cross-examination.  The motion to

strike out this answer was rightly overruled. *Conner* v. *Citizens St. R. Co.* (1896), 146 Ind. 430, 442; 12 Cyc., 1102; 29 Am. and Eng. Ency. Law (2d ed.), 410.

Certain witnesses were permitted to testify over appellant's objection that Thomas Muldoon was generally reputed to be superintendent, and Ernest Hart chief engineer at appellant's Wolfe lake ice plant. The elementary and general rule is that the best evidence must always be adduced, and proof of reputation when competent, is only permissible in case primary evidence to the same effect is not attainable. It was manifestly within appellee's power to obtain direct and positive evidence as to the relation of Muldoon and Hart toward appellant, and of the authority and duties assigned to and exercised by each of them under his employment. There was clearly no necessity for a resort to proof of general reputation to establish such facts, and this testimony was improperly received. *Earl* v. *Herd* (1839), 5 Blackf. 248; *Macy* v. *Combs* (1860), 15 Ind. 469, 77 Am. Dec. 103; *Uhl* v. *Harvey* (1881), 78 Ind. 26; *Louisville, etc., Terminal Co.* v. *Jacobs* (1903), 109 Tenn. 727, 72 S. W. 954, 61 L. R. A. 188; *Thompson* v. *Ish* (1889), 99 Mo. 160, 12 S. W. 510, 17 Am. St. 552; *Cobleigh* v. *McBride* (1876), 45 Iowa 116; *Boies* v. *McAllister* (1835), 12 Me. 308; *Commonwealth* v. *Loewe* (1895), 162 Mass. 518, 39 N. E. 192; *Bradbury* v. *Bardin* (1867), 34 Conn. 452; *Blevins* v. *Pope* (1845), 7 Ala. 371; *McGregor* v. *Hudson* (1905), (Tex. Civ. App.), 30 S. W. 489.

Appellant stated, in answer to interrogatories, that Muldoon was its superintendent, and this fact was settled beyond controversy. Hart testified that he was chief engineer, but appellant denied that it had any employe known as chief engineer. It was of little consequence by what title he was designated or known, since the mere title will not determine his powers and duties as an employe. In our opinion the wrongful admission of evidence that Hart was generally reputed to be "chief en-

gineer'' and Muldoon ''superintendent'' did not, under the circumstances of this case, constitute reversible error. *Thompson* v. *Ish, supra.*

Appellee propounded to Hart the following question: ''What was your employment with the Knickerbocker Ice Company at this time?'' To which he answered: ''I was 'chief engineer.' '' Appellant complains of this answer, but the question is broad enough to cover not only the substance of his contract, but also his actual work while in appellant's service at the time of the accident. It was clearly established that the work which. he performed was such as pertained to the position of one who might appropriately be styled chief engineer. Appellant's counsel are right in their contention that power of control is not necessarily deducible from the mere fact that one servant is the superior in rank of another.

Witness Hart was asked how long the floor of the engine-room had been sloping as described, and he answered that the year before they dug out under the corner to get at the condense barrel, which was underneath that corner. Appellant moved to strike out this answer, for the reason that it was not responsive to the question. The witness immediately following in his deposition testified that the effect of taking this dirt out and the sand away let the side slope a little. It is very plain that there was no substantial merit in this point, and the motion to strike out was properly overruled.

In the deposition of Ernest Hart, the following questions and answers appear: ''Q. State what the fact is about your having charge and superintendence over the men connected with the engines and machinery there. A. I do not understand what you mean. Q. Well, state whether you had charge of the men connected with the engines and machinery there. A. I did. I had full charge.''

Appellant insists that the latter question should have

been stricken out as leading and suggestive. In the case of *App* v. *State* (1883), 90 Ind. 73, this court, speaking to this point, said: "Cases are never reversed upon the ground that leading questions were permitted, unless it is made very clearly apparent that there was an abuse of discretion that did substantial injustice. A trial court has a large discretion in such cases, and its rulings will always be upheld where there is not a plain and inexcusable abuse of this discretionary power." This examination was in the form of a deposition; at the taking of which appellant was afforded an opportunity to appear and cross-examine to any extent it might deem necessary. The inducement for putting the question more directly appears, and the rejection of the question at the time it was attacked would probably occasion expense and possibly delay, without serving any substantial purpose or materially affecting the result. Conceding that the question is objectionable, the court did not abuse his discretion in overruling appellant's motion to strike it from the deposition. *Indiana R. Co.* v. *Maurer* (1903), 160 Ind. 25; *Shockey* v. *Mills* (1880), 71 Ind. 288, 36 Am. Rep. 196; *Chicago, etc., R. Co.* v. *Long* (1896), 16 Ind. App. 401; *Lake Shore, etc., R. Co.* v. *Anthony* (1895), 12 Ind. App. 126.

We have examined all the other alleged errors, involving the erroneous admission of testimony by experts as to customs of equipment, and conditions of operation, questions which assumed the existence of unproved facts, irrelevant evidence and testimony as to ultimate facts, which it was the province of the jury to determine, improper matter and repetition in rebuttal, and the exclusion of competent, material and relevant evidence on behalf of appellant, but find no available error in any of these instances.

It is finally contended that the case is not sustained by the evidence, that Hart and appellee were fellow servants, and that the evidence wholly fails to show any authority in Ernest Hart to order appellee to leave his engine-house and engage in other work.

In answer to interrogatories propounded, appellant stated that Thomas Muldoon was its superintendent at Roby, Indiana, and that Ernest Hart was employed during the months of January and February, 1901, to examine the engines and machinery, and see that they were in good working order, to assist in making repairs thereto, and to do such other work as ordered by superintendent Muldoon, or any foreman of any ice-house. Muldoon testified that he had talked with Mr. Field, appellant's president, with regard to the employment of Hart, and that Hart's business was to look after the engines, machinery and engine-rooms at all times, and that when the work required more than one man Hart got some one to help him; at times he had some one assisting him and at other times he worked alone. Samuel Harter testified Hart took charge as master mechanic in November or December, 1900, and thereafter had charge of the engines and boilers, and repaired the plant, and that witness was hired and set to work as fireman under appellee, by Hart, who visited the engine-room in which witness worked once each day or oftener. ·

Luther D. Wartena testified that he was hired by Hart and set to firing, and later transferred by him to the slush carrying engine; that Hart visited the engine-room daily, made inquiries as to how things were going, and if anything was needed furnished what was required; and if anything went wrong at any of the ice-houses Hart was the first man called, and came and remedied the trouble and gave orders.

Allison A. Walker testified that Hart had charge of the engine-room and of himself as assistant, and that he knew of Hart's hiring two different men and discharging one during the winter and prior to the accident to appellee, and that witness when set to work received his orders from Hart.

Gerry Jones testified that Hart bossed the engine men. Ernest Hart testified that his employment was as chief engineer at appellant's Wolfe lake ice-houses, and his duties were to look after the engines, machinery and men that were

connected with them; that he had full charge of the men connected with the motive power of the ice-houses.

Appellee testified that he was first presented to Muldoon, who referred him to Hart, and that Hart said: "I want you to go to number three, you are better acquainted there than any of the rest of the men;" that Hart was through the engine-room two or three times a day, and asked him if anything was needed and how things were running, tested the engines, kept watch to see that things were in good condition, and gave appellee directions at different times; that he did extra work after hours upon Hart's orders, and assisted Hart an hour or two the evening before he was injured. It further appeared that appellee received pay, without objection, for such extra work.

This evidence we think sufficient to warrant the jury in finding that Hart was authorized by appellant to order and direct appellee to leave his usual position and go into the slush carrier engine-room to do the work assigned, and that in doing so appellee was not a mere volunteer. It was also abundantly shown that the slush carrier engine-room had been in the unusual and unsafe condition described, for such a length of time as to charge appellant with notice thereof, and to afford ample time in which to have put the engine and engine-room in safe and proper condition before the happening of this accident. We cannot concur in the claim that the verdict is not supported by sufficient evidence or is contrary to law. No error is made to appear in overruling appellant's motion for a new trial.

The judgment is affirmed.

Gillett, J., did not participate in this decision.