# SPROW *v.* STAPLES.*

---

PLEADING; NEGLIGENCE; TRIAL; DIRECTION OF VERDICT; MASTER AND SERVANT.

1. *Flynn* v. *Staples,* 34 App. D. C. 92, 27 L.R.A.(N.S.) 792, referred to, which decided that two distinct acts of negligence resulting in or contributing to one injury may be charged in one count of a declaration.

2. If two distinct acts of negligence are charged in a declaration containing one count, proof by the plaintiff at the trial of only one of such acts of negligence on the part of the defendant is sufficient; and it is error for the trial court to direct a verdict for the defendant where the plaintiff fails to prove both of such acts of negligence, but proves one.

---

*Master and Servant.*—In the following editorial notes, various questions of the master's duty in regard to appliances and tools are discussed and authorities presented: Duty of master to inspect tools or implements furnished servant, note to *Gulf, C. & S. F. R. Co.* v. *Larkin,* 1 L.R.A.(N.S.) 944; Duty to inspect materials upon which servant is to work, note to *Mooney* v. *Beattie,* 70 L.R.A. 831; Different forms of statement of the general rule with respect to the master's duty as to places and appliances furnished to servant, note to *Armour & Co.* v. *Russell,* 6 L.R.A.(N.S.) 602; Duty as to machinery and appliances, notes to *Richmond & D. R. Co.* v. *Elliott,* 37 L. ed. U. S. 728; *Union P. R. Co.* v. *Snyder,* 38 L. ed. U. S. 597, and *Union P. R. Co.* v. *O'Brien,* 40 L. ed. U. S. 767.

3. It is the duty of an employer to provide suitable and reasonably safe machinery and appliances for the use of his employee, and to keep the same in proper repair where the use is a continuing one. This duty to keep in repair carries with it that of making a reasonable inspection to ascertain if repair is needed to keep the machinery and appliances in safe condition for ordinary use.

4. An employer is not a guarantor of the safety of his employee, and the fact that an accident has occurred, resulting in an injury to the employee, raises no presumption of neglect of duty on the part of the employer. Neglect of duty must be proved as a fact to entitle the employee to recover damages for an injury received through an accident to the machinery and appliances in use.

5. The trial court is never justified in directing a verdict against the plaintiff at the close of his evidence, except in cases where, conceding the truthfulness of the witnesses and giving full effect to every legitimate inference deducible from their testimony, it is clear that the plaintiff has not made out a case sufficient in law to entitle him to a verdict. (Following *Adams* v. *Washington & G. R. Co.* 9 App. D. C. 26, and *Dodge* v. *Rush,* 28 App. D. C. 149, 8 A. & E. Ann. Cas. 671.)

6. In an action against a hotel proprietor for the death of a servant, caused by the explosion of a boiler to which two coffee urns were attached and which were in charge of the intestate, where the plaintiff's evidence tended to show that the explosion occurred by reason of a pipe leading to the steam valve becoming clogged with rust and sediment to such an extent that the safety valve and inlet for air ceased to perform their necessary functions, and that the negligence, if any, of the defendant consisted in the failure of the defendant to properly inspect the appliances, so that the clogging of the pipe might have been discovered and removed by suitable cleaning; that while the evidence did not show how long the appliances had been in use without inspection or repair, it did show that the accumulation of rust and sediment in the pipe and air inlet was the growth of "many months," and that its injurious consequences could have been prevented by cleaning every sixty days at least,—it was *held* that the evidence was sufficient to require the submission of the question of the defendant's negligence to the jury.

7. Contributory negligence is matter of defense, and, unless disclosed in proving the plaintiff's own case, must be established by evidence.

8. In an action to recover damages from a hotel proprietor for the death of a former servant who was killed by the explosion of an apparatus for making coffee, which was in charge of the intestate and which it was his duty to make use of, where it appeared by the plaintiff's

evidence that the explosion resulted from the clogging of a pipe connected with the apparatus and leading to the safety valve, but there was nothing to show that it was the duty of the intestate to inspect the apparatus or keep it in repair, or that he had actual knowledge of the defective condition of the pipe, or that the defect was open to ordinary observation in the performance of his duties, —it was *held* that no such contributory negligence on the part of the intestate was shown as to require the direction of a verdict for the defendant.

No. 2319. Submitted December 8, 1911. Decided February 5, 1912.

HEARING on an appeal by the plaintiff from a judgment of the Supreme Court of the District of Columbia, on verdict directed by the Court, in an action to recover damages for the death of the plaintiff's intestate.                    *Reversed.*

The COURT in the opinion stated the facts as follows:

This is an action for damages for personal injuries resulting in death, brought by Georgia Sprow, the administratrix of the decedent, against his employer, Orrin G. Staples.

The third amended declaration charged that defendant owned and conducted the Riggs Hotel, in the city of Washington. That plaintiff's intestate, Albert Flynn, was in the defendant's employ as coffee and carving man in the kitchen of defendant. That it was the duty of defendant to supply said Flynn with a safe place to work, to provide safe machinery and appliances for his use, and to keep the same in safe condition of repair. That defendant negligently permitted to remain upon said premises a certain boiler to which were attached two coffee urns, one on either side, constituting a battery, and which said boiler and urns were connected with the main boiler in said building by a steam supply pipe, and which, as the result of the negligence of the defendant in keeping them in repair, had become so clogged and rusted and worn in their valves and pipes as to prevent the proper passage of steam and water into and through the same, and, on account of which, became and were in a dangerous and unsafe condition for use; and further, as the result of the negli-

gence of the defendant, there was wanting a steam gauge on and in connection with the said steam supply pipe leading from the main boiler in the basement to the kitchen, to indicate the quantity of steam passing through said pipe, the absence of which, in connection with the defective condition of the valves and pipes aforesaid, also rendered the machinery and appliances dangerous and unfit for use. That by reason of the defective condition of the pipes aforesaid, including the absence of the steam gauge aforesaid, the said boiler exploded on January 12, 1906, and so injured said Flynn that he died therefrom on said date, etc.

Charlotte Thomas, a witness for plaintiff, testified that she was employed in defendant's hotel kitchen on January, 2, 1906. Flynn was known as the coffee and carving man, and was so employed at the time. Flynn and his assistant, Cooper, were behind the carving table. There was a small wheel that fell off the boiler. Witness said to Flynn: "Run over here; something is the matter with the boiler." Witness picked up the wheel and handed it to Flynn. Saw him go to the urn and reach around with the wheel. There was a terrific noise, and she saw Flynn on the floor, on which were 5 or 10 gallons of water. He was scalded. Cross-examined, she said that, previous to the accident, she went to the hot-water urn to get some water, set the cup on the table and turned the spigot; the water flew all around and the steam was escaping, making a terrible noise. After that she saw the wheel which she picked up. Saw Flynn reach around the boiler, and while his arm was around there the collapse or explosion occurred. Flynn alone was in charge of the boilers; he made the hot water, coffee, and tea. He had made the coffee and tea in the morning and at luncheon on that day. The battery, so far as witness knew, was working all right, and was in good condition during the morning and luncheon hours.

Cooper, the assistant, testified that he was in the pantry beside Flynn at the dinner hour; had been employed there three years. He heard Miss Thomas call Flynn, pick up the wheel, and hand it to him. He walked to the urn, put his head down,

and the explosion occurred.  He did not touch anything; did not have time.  The water went all over him.

Fitzhugh Taylor testified that he was in the employ of a firm dealing in fixtures of the kind, and also engaged in manufacturing and repairing coffee urns.  Was a foreman and salesman, and familiar with such machinery.  Was called to the hotel immediately after the accident.  Found the head blown out of the water urn, a wheel off, as well as a valve connecting the two urns.  Asked how the urns should be cleaned, he said the brass plug in the urn should be taken out, all the valves which connect at the bottom of the coils taken out to see if they are clear, or need to be repacked.  The connections between the urns should be taken out and something run through them to see that they are clear.  The glass should be clear.  He then explained the process of cleaning all of the pipes and connections, saying it required a practical man.  The man in charge ought to clean the jars, wash the glass tube, etc.  It does not require an experienced man to do that; he examined the valves after defendant had sent them to the shop.  Tried to force a rod through the pipe leading to the exhaust, but could not do so; nor could he force it through the inside of the valve which leads to the auxiliary urns, because it was chocked with sediment,—an accumulation of rust and dirt, and other particles.  It was so chocked that it would not permit the passage of air or steam. It was a condition that had existed for many months.  That, in order to insure safety, the sediment should be removed as least every sixty days, and the pipes cleaned thoroughly as before described.  Cross-examined, he said that the operator of the urn would be able to tell whether the water was syphoning into the auxiliary urns; that the water gauge in front indicates the amount of water in the urn.  On the inside of the urn—boiler— was a coil of copper pipes.  The steam from some remote point passed through those pipes and then exhausted.  If the urn be full of hot steam the injection of cold water would create a vacuum above the water line, and the sides would cave in by reason of the pressure of the outer air.  If there were an explosion the sides would bulge out, instead of caving in.  If

coffee and tea had been made morning and noon of the same day, it would indicate that everything was in good condition. It would take 2 pounds of steam to lift the safety valve. (This safety valve was in the top of the boiler urn.) Witness's opinion was that there was a vacuum created in the urn, and that it collapsed, instead of exploding. Re-examined, he said that it was his opinion that a vacuum was created in the urn; the safety valve being chocked there was no escape for the surplus steam, and that caused the accident. In answer to a question, he said that if there had been no water in the urn, or practically none, and the coils kept getting hotter, there being no chance for the vapor or steam to escape, the sudden injection of cold water would blow the urn to pieces and the coils out also. The coils were found intact.

Henry Hammond testified that he was manager of the firm, employing the preceding witness. That steam is introduced into the center urn by a circular coil in the bottom, which heats the water, causing a slight steam pressure to create a syphon, which feeds through a pipe into the two side urns. When they want to make coffee they open the valve and syphon in enough water for the purpose. The steam in the coil goes out and is exhausted at the other end.

The blow-off or escape valves had three functions: 1. The escape of steam when the pressure is over two or three pounds, by raising the top or seat. 2. A small escape or whistle to notify the man that the pressure is on the urn. 3. An air intake through the top. If the pipe leading to the blow-off or vacuum valve were clogged, and a person attempted to draw water from the spigot and got steam, the drawing off would leave a space, because no air could be admitted. If the pipe was open, and the safety valve had been performing its normal functions, no collapse or blow up would result from use in drawing off water for coffee. Other testimony tended to show that intestate had been in the employ of defendant for more than twelve years, also his age, wages, etc.

Upon conclusion of the foregoing evidence for the plaintiff,

the court, on defendant's motion, directed a verdict for the defendant. From the judgment thereon plaintiff has appealed.

*Mr. E. Hilton Jackson* and *Mr. Hayden Johnson* for the appellant.

*Mr. Henry E. Woodard* and *Mr. Conrad Syme* for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

The direction of the verdict appears to have been upon the following grounds: (1) The declaration charging that the injury resulted from two acts of negligence in respect of the appliances furnished, and there being no attempt to prove but one, the case alleged was not proved. (2) The evidence failed to show how long the appliance had been in use, or that the defendant had any notice or knowledge of its defective condition.

The appellee seeks to support the judgment on the additional ground that the evidence clearly showed that the injury received by the plaintiff's intestate was the result of his own negligence. These propositions will be considered in the order stated.

1. On a former trial the declaration was stricken out on motion of the defendant, on the ground that two separate causes of action were set out in one count. Plaintiff declining to amend, judgment was rendered against her. On appeal that judgment was reversed. *Flynn* v. *Staples*, 34 App. D. C. 92, 27 L.R.A.(N.S.) 792. The appellant, as stated in the opinion in that case, contended that the two acts of negligence alleged in the declaration conjunctively constituted the cause of action, and were so closely connected that they could not be considered separately. In stating its conclusion, the court said that the two acts of negligence, as charged, contributed, or were capable of contributing to produce the explosion; each charge of negligence tended to support the other, and their effect was cumula-

tive. The point decided was that two distinct acts of negligence resulting in or contributing to one injury could be charged in one count; but it was not said in the opinion that if two such separate acts of negligence were charged, both must be proved to entitle the plaintiff to recover. The injury complained of is the cause of action. It may have been the result of one of several distinct acts of negligence, or it may have been contributed to by all of them, or by more than one. That is a matter of proof. If the plaintiff can prove one act of negligence sufficient to cause an actionable injury it is enough. *Weber Wagon Co.* v. *Kehl,* 139 Ill. 644–656, 29 N. E. 714; *New Work, C. & St. L. R. Co.* v. *Robbins,* 38 Ind. App. 172–175, 76 N. E. 804; *Savannah, F. & W. R. Co.* v. *Evans,* 121 Ga. 391–397, 49 S. E. 308; *O'Connor* v. *Boston & L. R. Corp.* 135 Mass. 352–358; *Louisville & N. R. Co.* v. *Shearer,* 119 Ky. 648, 59 S. W. 330.

The declaration alleged that defendant neglected his duty in permitting the steam pipe of the boiler urn to become so rusted and clogged, through want of necessary inspection and repair, as to prevent the proper passage of air and steam through the same. As an additional act of negligence of duty in respect of supplying safe appliances, it was charged that the defendant failed to provide a steam gauge in the supply pipe for steam from the main boiler in the basement to the boiler urn. On the trial, plaintiff made no attempt to show that it was neglect of duty not to provide the steam gauge in the supply pipe, but limited her proof of negligence to the rusted and clogged pipe leading to the safety valve in the top of the boiler urn, which she claimed resulted from the failure of due care on the part of the defendant. This being a separate and distinct act, she was not compelled to prove the other.

2. It is the duty of an employer to provide suitable and reasonably safe machinery and appliances for the use of his employee, and to keep the same in proper repair where the use is a continuing one. This duty to keep in repair carries with it that of making a reasonable inspection to ascertain if repair is needed to keep the machinery and appliances in safe condition

for ordinary use. *Texas & P. R. Co.* v. *Barrett,* 166 U. S. 617, 41 L. ed. 1136, 17 Sup. Ct. Rep. 707; *Looney* v. *Metropolitan R. Co.* 200 U. S. 480–486, 50 L. ed. 564–568, 26 Sup. Ct. Rep. 303; *Washington & G. R. Co.* v. *McDade,* 135 U. S. 554–570, 34 L. ed. 235–241, 10 Sup. Ct. Rep. 1044.

But the employer is not a guarantor of the safety of the employee, and the fact that an accident has occurred, resulting in injury to the employee, raises no presumption of neglect of duty on the part of the employer. Neglect of duty must be proved as a fact to entitle the employee to recover damages for an injury received through an accident to the machinery and appliances in use. Where evidence has been given by a plaintiff, the court is never justified in directing a verdict against him, except in cases where, conceding the truthfulness of the witnesses and giving full effect to every legitimate inference deducible from their testimony, it is nevertheless plain that the party has not made out a case sufficient in law to entitle him to a verdict. *Adams* v. *Washington & G. R. Co.* 9 App. D. C. 26–30, and cases cited; *Dodge* v. *Rush,* 28 App. D. C. 149–154, 8 A. & E. Ann. Cas. 671.

Plaintiff's evidence was to the effect that the pipe leading to the safety valve in the top of the boiler urn, originally suitable and safe, had become clogged with rust and sediment to such an extent that the safety valve and inlet for air ceased to perform their necessary functions, thereby causing the explosion or collapse of the boiler. The negligence, if any, consisted in the failure of the defendant to properly inspect the appliances, so that the clogging of the pipe might have been discovered and removed by suitable cleaning. This duty of inspection and repair must necessarily depend upon the circumstances of the particular case. Reasonably, it must vary according to the more or less dangerous character and uses of the appliances, the duties of the employer with respect thereto, his knowledge or means of knowledge of the conditions, and other circumstances. It is true, as argued, that the evidence did not show how long the appliances had been in use without inspection or repair, but it did show that the accumulation of rust and sediment in the

safety-valve pipe and air inlet was the growth of "many months," and that its injurious consequences could have been prevented by cleaning every sixty days, at least.

Tested by the principle before stated, we think that this evidence was sufficient to require the submission of the defendant's neglect of duty to the jury.

3. The court did not direct the verdict on the ground of contributory negligence on the part of plaintiff's intestate. Nor, in our opinion, can the judgment be made to rest thereon, regardless of the grounds specially assigned.

Contributory negligence of the plaintiff is matter of defense, and, unless disclosed in proving the plaintiff's own case, must be established by evidence.

Defendant contends that it was the duty of the intestate to clean and keep the appliances in repair, and that the clogged condition of the pipe was open to his observation. Whatever the facts may be, the defendant offered no proof of them, and we fail to find in the plaintiff's evidence anything from which it may be necessarily inferred that it was his duty to inspect and clean the pipes, or that their dangerous condition was open to his observation to the extent that he must be held to have taken the risk of their use without cleaning or repair. So far as the evidence discloses, it was his duty to make use of the appliances in making coffee. There is nothing to show that it was part of his duty to inspect the apparatus, and to keep it clean and safe for use. If it can be shown that it was the duty of the intestate to keep the appliances clean and in safe condition, or that he had actual knowledge of the defective condition of the pipe, or that the same was open to ordinary observation in the performance of his services, he must be deemed to have accepted the risk of all danger reasonable to be apprehended from his use of the same. But these conditions must be shown by the defendant in order to bar recovery in case the jury should find that he had been guilty of negligence.

The judgment will be reversed, with costs, and the cause remanded for another trial.                    *Reversed.*